ACCEPTED
13-14-00523-CV
THIRTEENTH COURT OF APPEAL
CORPUS CHRISTI, TEXAS
4/9/2015 11:29:20 AM
DORIAN RAMIREZ
CLERK

FILED IN
13th COURT OF APPEALS
CORPUS CHRISTI/EDINBURG, TEXAS
4/9/2015 11:29:20 AM
DORIAN E. RAMIREZ
Clerk

No. 13-14-00523-CV

# IN THE COURT OF APPEALS FOR THE
# THIRTEENTH JUDICIAL DISTRICT OF TEXAS

---

David Robertson, Appellant

v.

Oksana Robertson,  Appellee

---

ORAL ARGUMENT REQUESTED

Brief of David  Robertson

On appeal from judgment
in cause number 2013-FAM-2820-E
In 148th District Court
Nueces County, Texas
Hon. Guy Williams, Presiding

Clint F. Sare
Texas Bar No. 788354
P.O. Box 1694
Bryan, Texas 77806
(979) 822-1505
Counsel for  David Robertson

## IDENTITY OF PARTIES AND COUNSEL

Appellant:                          David Robertson


    Appellate Counsel:          Clint F. Sare
                                        P.O. Box 1694
                                        Bryan, Texas  77806


    Trial Counsel:              William Douglas Bloodworth, II
                                          1012 University Ave.
                                        Huntsville Texas  77320
    Prior trial counsel:

                                          Larry Adams
                                          870 First City Tower II
                                          Corpus Christi, Texas  78401

                                          James E Monnig
                                          310 S. St Mary's St. Ste 1470
                                          San Antonio Texas 78205


Appellee:                           Oksana Robertson

    Appellate Counsel:           Audrey M. Vicknair
                                          802 N. Carancahua Ste. 1350
                                          Corpus Christi, Texas   78401

    Trial Counsel:              Michael O'Reilly
                                            500 N. Shoreline Blvd, Ste. 604
                                          Corpus Christi Texas  78401
    Prior trial counsel:

                                          William Dudley
                                          1126 Third St.
                                          Corpus Christi, Texas 78404

# TABLE OF CONTENTS

Identity of Parties and Counsel ................................................................................ ii

Table of Contents ...................................................................................................... iii

Index of Authorities ................................................................................................. iv

Statement of the Case ............................................................................................... 1

Points of Error ........................................................................................................... 1

Statement of Facts ..................................................................................................... 2

Summary of the Argument ........................................................................................ 11

Argument ................................................................................................................... 12

  Point 1. The trial court erred in rendering partial summary judgment finding an

  enforceable agreement between the parties ........................................................... 12

    A. David's Summary Judgment Evidence Was Proper. ................................. 12

    B. Rendition of Partial Summary Judgment for Oksana was Error Because the
    Summary Judgment Evidence Shows a Genuine Question of Fact on
    Enforceability of the Agreement. ...................................................................... 14

    C. The Trial Court Erred in Rendering Partial Summary Judgment for
    Oksana Because it Failed to Apply the Proper Statute. ................................... 22

  Point 2. The trial court erred in making a division of property which divested

  Appellant of separate property. .............................................................................. 24

  Point 3. The trial court erred in granting relief which went beyond the

  agreement sought to be enforced. .......................................................................... 24

  Point 4. The trial court erred in making a division of post-divorce income. ..... 25

  Point 5. The trial court erred in awarding attorney's fees pursuant to the

  property agreement in the absence of any pleadings requesting attorney's fees

  under the agreement. .............................................................................................. 28

Prayer for Relief ....................................................................................................... 29

Certificate of Compliance ........................................................................................ 30

with Brief limitations and Service ........................................................................... 30

Appendix ................................................................................................ 31

## INDEX OF AUTHORITIES

**Cases**

*Anguish v. State*, 991 S.W.2d 883 (Tex.App.—Houston [1st Dist.] 1999, pet. ref'd) .............................................................................................................. 20

*Cooper v. Cochran*, 288 S.W.3d 522 (Tex. App.—Dallas 2009, no pet.). 20, 21, 22

*Cunningham v. Parkdale Bank*, 660 S.W.2d 810 (Tex. 1983) .............................. 28

*Dailey v. Albertson's, Inc.*, 83 S.W.3d 222 (Tex.App.--El Paso 2002, no pet.) .... 13

*Deltuva v. Deltuva*, 113 S.W.3d 882 (Tex.App.-Dallas 2003, no pet.) ................. 26

*Eggemeyer v. Eggemeyer*, 554 S.W.2d 137 (Tex. 1977) ....................................... 24

*Fed. Fin. Co. v. Delgado*, 1 S.W.3d 181 (Tex. App.—Corpus Christi 1999, no pet.) ............................................................................................................ 14

*Hartford Fire Ins. Co. v. C. Springs 300, Ltd.*, 287 S.W.3d 771 (Tex.App.—Houston [1st Dist.] 2009, pet. denied) ............................................................. 28

*Holloway v. Skinner*, 898 S.W.2d 793 (Tex.1995). ............................................... 18

*In re Vesta Ins. Group*, 192 S.W.3d 759 (Tex. 2006)............................................ 17

*Kessler v. State*, 850 S.W.2d 217 (Tex.App.—Fort Worth 1993, no pet.) ............ 20

*Landon v. Jean-Paul Budinger, Inc.*, 724 S.W.2d 931 (Tex.App.—Austin 1987, no writ) ............................................................................................................. 25

*Malooly Bros. Inc. v. Napier*, 461 S.W.2d 119 (Tex. 1970)................................. 12

*Martin v. Martin*, 287 S.W.3d 260 (Tex.App.—Dallas 2009, pet. denied)19, 21, 22

*McDowell v. State*, 235 S.W.3d 294 (Tex. App.—Texarkana 2007, no pet.) ....... 19

*Moore v. Moore*, 383 S.W.3d 190 (Tex.App.—Dallas 2012, pet. denied)............ 17

*Nesmith v. Berger*, 64 S.W.3d 110 (Tex. App.—Austin 2001, pet. denied) ......... 19

*Oil Field Haulers Ass'n v. Railroad Comm'n,* 381 S.W.2d 183 (Tex. 1964). ....... 28

*Osborn v. Osborn*, 961 S.W.2d 408 (Tex.App.-Houston [1st Dist.] 1997, pet. denied)................................................................................................ 23

*Osorno v. Osorno*, 76 S. W.3d 509 (Tex.App--Houston [14th Dist.] 2002, no pet.). ..................................................................................................... 18

*Pickens v. Pickens*, 62 S.W.3d 212 (Tex.App.--Dallas 2001, pet. denied)............ 26

*Provident Life v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003) ................................... 15

*Republic Nat. Leasing Corp. v. Schindler*, 717 S.W.2d 606 (Tex. 1986).............. 14

*Rivera v. Countrywide Home Loans, Inc.*, 262 S.W.3d 834 (Tex.App.—Dallas 2008, no pet.) ..................................................................................... 28

*Ryland Group, Inc. v. Hood*, 924 S.W.2d 120 (Tex.1996) (per curiam) .............. 13

*Sanders v. Republic Nat. Bank of Dallas*, 389 S.W.2d 551 (Tex.Civ.App.—Tyler 1965, no writ) ................................................................................ 20, 22

*Seelback v. Chubb*, 7 S.W.3d 749 (Tex.App.—Texarkana 1999, pet. denied) ..... 17

*Sheshunoff v. Sheshunoff*,172 S.W.3d 686 (Tex.App.--Austin 2005, pet. denied) 18

*Stevens v. State Farm Fire & Cas. Co.*, 929 S.W.2d 665 (Tex. App.--Texarkana 1996, writ denied). .................................................................... 12

*Taft v. Sherman*, 301 S.W.3d 452 (Tex.App.—Amarillo 2009, no pet.)............... 12

*Tellez v. Tellez*, 345 S.W.3d 689 (Tex.App.—Dallas 2011, no pet.)............... 26, 27

*Tenneco Oil Co. v. Gulsby Eng'g, Inc.*, 846 S.W.2d 599 (Tex.App.—Houston [14th Dist.] 1993, writ denied)........................................................... 19

*Tower Contracting Co., Inc. of Tex. v. Burden Bros., Inc.*, 482 S.W.2d 330 (Tex.Civ.App.—Dallas 1972 writ ref n.r.e.)..................................... 20

*Valenzuela v. State & County Mut. Fire Ins. Co.*, 317 S.W.3d 550 (Tex.App.--Hous. [14th Dist.] 2010, no pet.) ................................................... 13

**Statutes**

Tex. Civ. Prac. & Rem. Code § 38.002 ................................................................. 29

Tex. Fam. Code § 3.001................................................................................. 23

Tex. Fam. Code § 4.105 ............................................................. 14, 16, 31

Tex. Fam. Code § 4.206 ................................................................. 22, 23

Tex. Fam. Code § 6.502(a) ................................................................. 25

Tex. Fam. Code § 8.051 ...................................................................... 26

Tex. Fam. Code § 8.054 ...................................................................... 27

Tex. Penal Code § 8.05 ....................................................................... 19

**Rules**

Tex. R. App. P. 43.4 ........................................................................... 29

Tex. R. Civ. P. 166(a)(f) .................................................................... 13

Tex. R. Civ. P. 166a(i) ....................................................................... 15

Tex. R. Civ. P. 301 ............................................................................. 28

Tex. R. Civ. P. 67 ............................................................................... 28

## STATEMENT OF THE CASE

Appellant brings this appeal from a final decree of divorce based on a partial summary judgment holding a conversion agreement between the parties was valid and enforceable. Based on that ruling, the trial court denied Appellant a jury trial, and made a division of property in accordance with the purported agreement and granting additional relief.

## POINTS OF ERROR

**Point 1. The trial court erred in rendering partial summary judgment finding an enforceable agreement between the parties.**

**Point 2. The trial court erred in making a division of property which divested Appellant of separate property.**

**Point 3. The trial court erred in granting relief which went beyond the agreement sought to be enforced by the Appellee.**

**Point 4. The trial court erred in making a division of post-divorce income.**

**Point 5. The trial court erred in awarding attorney's fees pursuant to the property agreement in the absence of a pleading requesting attorney's fees under the agreement.**

## STATEMENT OF FACTS

In 1982 David Robertson was seriously injured in a workplace accident. (CR 180; 2 RR 45). As a result of the accident and complications from the initial injuries he is a quadriplegic who must use an electric wheelchair (CR 180; 2 RR 43-44), requires 24 hour nursing care (CR 180) and takes medication daily to manage pain. (CR 39). David received only a small payment from workers compensation from the time of that injury until 1998.[1] At that time the insurance carrier for his former employer agreed to payment for the full-time nursing care he required. (CR 180). The initial monthly payments were $15,000.00. (CR 180, 190[2], 192).

In 1999 David and his grandmother purchased a house in Junction Texas for the grandmother's use. (CR 193). At that time Oksana Robertson was a resident of Kremenchuk in the Ukraine. (CR 41). David and Oksana met online in February 2002 and, starting in April of that year, and took two trips to meet in the Dominican Republic. (CR 40, 42). They discussed marriage the first time they met. (CR 44). They were married in Livingston,

---

[1] The record reflects that as of 2012 David received $139 per week from worker's compensation and $426 per month in social security benefits. (CR 28).

[2] The initial settlement was with Royal Insurance, the predecessor to Arrowpoint Capital.

Texas in September 2002. (CR 44). In November they purchased a house in Corpus Christi that was modified to accommodate David's needs and they moved there. (2 RR 59). The house was purchased with a down payment from David's separate property and the remainder on his credit. (CR 181, 198). David depended on Oksana for much of his daily care and they only paid a nurse a few hours a day to reduce nursing costs. (CR 182; 2 RR 22). During the marriage David also paid for Oksana to go to school to become a massage therapist. (CR 181).

Not long after the marriage Oksana began threatening David with divorce if he did not do what she wanted. He executed a will in 2003 naming Oksana a beneficiary under threats of divorce. (CR 105-106). He adopted her son in 2004. (2 RR 18, 105).

In 2005 two disputes arose with the insurance carrier concerning payment for his nursing care. One centered on the failure to pay cost of living increases. (CR 180). In August 2007 David hired attorney Daniel Horne to resolve those disputes. (CR 182). An agreement was reached on the cost of living dispute which provided for a lump sum payment of $220,000. (CR 180; 2 RR 64). $20,000 went to David's attorney. (2 RR 62). David made a gift of $100,000 to Oksana. (CR 182; 2 RR 33-34, 62). He also put $20,000 into a college fund for her son. (CR 182; 2 RR 62). Of

3

the remaining $80,000, he invested $40,000 in coins and paid for improvements to the house. (2 RR 65). A dispute remained over the carrier's efforts to reduce the monthly payments for nursing care.

David, as sole plaintiff, brought suit against the carrier[3] for bad faith settlement practices. (CR 182, 202). While that litigation was pending David executed a second will after Oksana accused him of trying to "cheat her out of everything." (CR 106). She also sought to have him assign part of his monthly payments to her and transfer property to her. (CR 182). David and Oksana consulted with an attorney named Robert Johnson, who they knew because he was also their neighbor, about David's pending suit. (CR 182). The conversations with Johnson led David to believe any recovery in his suit would be community property. (CR 186). Mr. Horne withdrew on the eve of trial in 2012 when the David declined to accept a settlement offer. (CR 63-64, 66).

During that time David traveled between Corpus Christi and Junction where he was helping his grandmother remodel the house there. (CR 183). Those trips required David to hire nurses for his care because Oksana would not travel with him. (CR 183). The expense of this nursing care was a

---

[3] The carrier is variously identified as Arrowood Indemnity (CR 202, 595) or Arrowpoint Capital. (CR 125, 561). The record does not explain the discrepancy.

source of conflict. (CR 183). David agreed to a specific monthly limit on his nursing care, leaving more money for other living expenses. (CR 184).

David testified that Oksana wanted to control every dollar and that if he did not do what she wanted she had threatened to ensure the payments for his nursing care would end and he would be in a nursing home.[4] (CR 75-76). Fearing there may be nothing from the case against the insurance company, Oksana increased pressure on David to transfer property to her. (CR 183). David had significant anxiety over that. (CR 76-77).

In early June 2012 Mr. Johnson contacted defense counsel to see if the offer was still available. (CR 67). It was, with conditions concerning payment of attorney's fees and hospital liens. (CR 185, 595). A week later the Robertsons met with Mr. Johnson again. (CR 125). The following day Mr. Johnson sent a letter acknowledge he had given legal advice on the claims against Arrowpoint Capital and possible claims against Mr. Horne in that case but he then withdrew from any further advice to them. He advised each to get their own attorney due to conflicts of interest between them but said if they could resolve the conflicts it would allow his continued representation. (*Id*.). The impending settlement did not resolve Oksana's attempts to have David transfer property to her. (CR 185).

---

[4] The testimony was given in David's deposition and offered as summary judgment evidence by Oksana.

David tried to resolve the conflicts with Oksana so Mr. Johnson could represent them in the bad faith claim. (CR 70). This included going to marriage counseling. (CR 67). Oksana went to one session. (CR 71, 185). After David was unable to find another attorney to represent him in that case, the pressure of Oksana increased. (CR 185).

On July 12, 2012, David signed an agreement drafted by an attorney named Duncan Neblett who had been contacted by Oksana but who did not claim to represent either party. He did not disclose to David that he had a previous attorney-client relationship with Oksana, advising her on marital property law. This was only revealed during the deposition of Mr. Neblett. (CR 234). The events leading up to that date are detailed in David's summary judgment affidavit. (CR 185-88). The document was described as a marriage contract and partition agreement. (CR 18). It purported to be a "partition or exchange" of property between them during marriage and establish payment of monthly expenses. (CR 18). It did not list any property as separate, but only purported to make a division of community property and income. (CR 18). Schedules A and B listed property to be the separate property of David and Oksana respectively. Schedule B listed the couple's residence as Oksana's separate property. (CR 29). The real property listed as David's consisted of empty lots and his interest in the residence in

6

Junction owned before marriage. (CR 28). Each could sell the property listed as theirs without restriction.

Schedule C listed typical monthly expenses and required that all be paid out of the monthly check David received from Arrowpoint Capital for nursing care. (CR 30). The agreement contained a provision estopping the parties from "making any claim [] to any separate property or the separate estate of the other party." (CR 20-21). Under that agreement David was prohibited from making changes to his will without Oksana's consent. (CR 22). There was no corresponding restriction on Oksana. David testified he signed the document under the threat that Oksana would "strip me of my nursing benefits" if he did not. (CR 58). His affidavit detailed the conduct of Oksana leading up to execution of the agreement. (CR 187). He testified she even threatened his life. (CR 108).

In March 2013 David went to visit the property in Junction, Texas. Before he returned Oksana filed suit and led him to believe she had obtained a restraining order preventing him from returning to their house. (CR 54; SCR 4).

At a hearing on temporary orders the parties stipulated the monthly cost of nursing care was $10,900. (2 RR 8-9). Oksana admitted to having $90,000 of the 2007 gift from David and may have had as much as $150,000

7

in various accounts. (2 RR 34). David had accounts containing approximately $12,000. (2 RR 61).

Following unsuccessful mediation, in December 2013 David requested a jury trial. (CR 5). On the day previously set for a bench trial Oksana sought to have the trial court conduct a bench trial on the validity of the July 2012 agreement. (4 RR 7, 16). At that hearing Oksana's counsel informed the court she had decided not to seek summary judgment on the validity of the contract because a controverting affidavit from David would defeat entitlement to summary judgement. (4 RR 9, 14, 16). A little over a month later Oksana filed a "traditional motion for partial summary judgment." (CR 7).

Her motion alleged that David had the burden to establish the agreement was invalid. (CR 9). It purported to represent David's position, based on portions of his deposition testimony, and argued the cited portions were insufficient to establish "duress." (CR 13). Oksana did not provide her affidavit in support of her motion. She only attached the affidavits of Robert Johnson (CR 120), Duncan Neblett (CR 134) and documents which were not authenticated by affidavit.

David filed a response supported by his affidavit setting out his injury and medical condition (CR 181), the history of the relationship with Oksana

8

(CR 181-82, 184-87), the dispute with Arrowpoint Capital (CR 182-83), the payments to Oksana (CR 182), the threats from Oksana (CR 185-87), and the events surrounding execution of the disputed document. (CR 184-87).

At the hearing on Oksana's motion she challenged David's affidavit (6 RR 45) but conceded the court was required to take his statements as true. (6 RR 42). The core of her argument was that David bore the burden to establish the agreement was not enforceable and the agreement was enforceable because the threats alleged by David were not to take acts she had no legal right to do. (*Id.*).

The trial court initially found David's affidavit "defective" because it did not contain the words "true and correct." (6 RR 45, 59). The court later stated it "gave the affidavit full consideration." (7 RR 14). It further focused only on the threats Oksana made on the lives of David's family members. (6 RR 59). The court held these were insufficient to raise a fact question on whether the agreement was signed voluntarily because they did not show that there was an "imminent threat" to David's life, and David had not alleged the agreement was unconscionable. (6 RR 59, 60). The court stated he was granting Oksana's motion on that basis. (6 RR 63). The trial court signed an order granting partial summary judgment finding the "marriage contract" is valid and binding. (SCR 9; 7 RR 8, 14).

The trial court subsequently denied David's request for a continuance and to compel discovery to determine the extent of the marital property. (7 RR 17, 32). It also denied his request for a jury trial. (7 RR 32). It conducted a final hearing on July 7, 2014. (8 RR 5). Based on the prior rulings on the partial summary judgment and denial of a jury trial, the only issues presented were termination of the marriage and evidence of attorney's fees. (8 RR 6-8). The court granted the divorce based on insupportability. (8 RR 9, 21). Oksana presented evidence of her attorney's fees and argued she was entitled to them under the terms of the agreement and not the Family Code. (8 RR 11-19, 22-24). David objected to the absence of pleadings seeking attorney's fees on the contract. (8 RR 25).

The trial court signed a final judgment on July 30, 2014. (CR 782). It found the July 12, 2012 agreement was binding and enforceable, and made a division of property that sought to track the appendices of that agreement, declaring as Oksana's separate property the home in Corpus Christi, a Cadillac, two listed bank accounts and "any other bank account" in her name, all gold and silver coins, 50% of silver coins except for some purchased by David before marriage, 50% of the proceeds of David's suit against Arrowpoint Capital and any malpractice claim against David's original attorney, in addition to any property she acquired before marriage.

10

She received all income from her massage business in addition to 50% of the net proceeds of David's monthly payments from Arrowpoint after payment of specified bills. (CR 784)

The court considered and denied Appellant's Motion for New Trial which was based on the denial of his motion for continuance, denial of a jury trial, the factual sufficiency of the evidence, granting the partial summary judgment, and division of property. (CR 777, 781).

## SUMMARY OF THE ARGUMENT

The trial court improperly granted partial summary judgment holding a marital property agreement was error because the agreement sought to dispose of separate property and did not comply with statutory requirements for such agreements. The agreement was unenforceable because it purported to govern post-marriage income which is not authorized by statute. Even if the agreement was authorized by statute, the summary judgment evidence showed a genuine question of fact on enforceability of the agreement.

***Point 1.  The trial court erred in rendering partial summary judgment finding an enforceable agreement between the parties***

There are multiple reasons the trial court erred in rendering partial summary judgment finding the July 12, 2012 agreement valid and enforceable.  Appellant presents each of those reasons in a single point as permitted by *Malooly Bros. Inc. v. Napier*, 461 S.W.2d 119, 121 (Tex. 1970).  The argument attacking each ground under a global challenge to summary judgment is proper and does not render the point multifarious.  *See e.g., Stevens v. State Farm Fire & Cas. Co.*, 929 S.W.2d 665, 669 (Tex. App.--Texarkana 1996, writ denied).  Additionally, a party may challenge the granting of partial summary judgment following rendition of a final judgment.  *Taft v. Sherman*, 301 S.W.3d 452, 457 (Tex.App.—Amarillo 2009, no pet.).

*A. David's Summary Judgment Evidence Was Proper.*

During the hearing on Oksana's Motion for Partial Summary Judgment she objected to David's affidavit on the basis it did not contain the "magic words" "true and correct" and "within my knowledge."  (6 RR 45).  At the same time she agreed the court needed to accept the statements in his

affidavit as true.  (6 RR 42).  The trial court apparently agreed and found the affidavit defective, but stated he was considering it for the purpose of the hearing.  (6 RR 59-60).

Although the trial court stated he was considering the affidavit, because the affidavit is central to the issues before this court, Appellant presents this argument to confirm Oksana's challenges to the affidavit were without merit and the affidavit must be considered.

Oksana's argument that an affidavit must contain the "magic words" is not an accurate statement of the law.  The requirements for an affidavit presented as summary judgment evidence is set out in Rule of Civil Procedure 166(a)(f).  It provides:

> affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.

*See also Ryland Group, Inc. v. Hood*, 924 S.W.2d 120, 122 (Tex.1996) (*per curiam*).   It is not the magic words which determine the validity of an affidavit, but whether it shows the affiant has personal knowledge and the basis for that knowledge.  *Valenzuela v. State & County Mut. Fire Ins. Co.*, 317 S.W.3d 550, 553 (Tex.App.--Hous. [14th Dist.] 2010, no pet.); *Dailey v. Albertson's, Inc.*, 83 S.W.3d 222, 227 (Tex.App.--El Paso 2002, no pet.).

13

Parenthetically, the words "true and correct" would only apply if the affidavit was used to authentic copies of documents.[5] *Republic Nat. Leasing Corp. v. Schindler*, 717 S.W.2d 606, 607 (Tex. 1986).

Even if an affidavit had not specifically recited the facts are true but shows the basis of personal knowledge and is sworn to, it is not defective. *Fed. Fin. Co. v. Delgado*, 1 S.W.3d 181, 184 (Tex. App.—Corpus Christi 1999, no pet.)(and cases cited therein). Here David's affidavit stated it was based on his personal knowledge and showed the basis of his knowledge because the affidavit described events he witnessed, actions he took and his own thoughts and feelings. (CR 180-188). The affidavit was proper summary judgment evidence.

*B. Rendition of Partial Summary Judgment for Oksana was Error Because the Summary Judgment Evidence Shows a Genuine Question of Fact on Enforceability of the Agreement.*

**1. Oksana Had the Burden.**

Oksana's Motion improperly attempted to place the burden on David to establish invalidity of the agreement. (CR 9). Her theory was that that section 4.105 of the Family Code controlled enforcement of the agreement

---

[5] It is worth noting that Oksana's Motion for Partial Summary Judgment contained no affidavits authenticating documents she attached. (CR 18, 34, 162).

and the statute requires a party challenging such an agreement to show it was not voluntary or it was unconscionable.[6] (CR 9).

When an opposing party has a burden to establish a claim or defense a litigant seeking summary judgment may file a no-evidence motion pursuant to Rule of Appellate Procedure 166a(i). A proper no-evidence motion must identify the element or elements on which there is no supporting evidence. (*Id*.).

Rather than file a no-evidence motion for summary judgment,[7] Oksana chose to file a traditional motion. Consequently, she assumed the burden to conclusively establish there is no genuine question of material fact on enforceability of the agreement even taking all evidence favorable to the nonmovant as true and indulging every reasonable inference in favor of David as the non-movant. *Provident Life v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). The trial court erred in holding David had the burden to establish invalidity of the agreement to avoid summary judgment.

---

[6] While purporting to quote from the Family Code in her motion, Oksana's counsel embellished the statutory language with a parenthetical statement that is not part of the statute and without indicating the addition. (CR 9).

[7] Or even a combined traditional and no-evidence motion. *See, e.g., Binur v. Jacobo,* 135 S.W.3d 646, 650–51 (Tex.2004).

**2. The Trial Court Applied the Wrong Standard on Voluntariness.**

Because Oksana filed a traditional motion for partial summary judgment she had the burden to negate each basis on which enforceability of the agreement could be challenged. Even assuming the agreement was a Marital Property Agreement governed by sections 4.101 - .106 of the Family Code, under section 4.105(a)(1) such an agreement is unenforceable if it is not signed voluntarily.

At trial Oksana argued this statute required evidence that David signed the agreement under duress. (CR 9, 10, 14, 121; 6 RR 41). She also contended that, even taking as true David's testimony that she had threatened to give Arrowpoint Capital a basis to terminate David's monthly payments for nursing care,[8] that was not evidence she threatened to do an act she did not have a legal right to take. (CR 14; 6 RR 42-43).

In deciding the voluntariness issue, the trial court made clear that he believed there had to be evidence of an "imminent threat" to David's life. (6 RR 59-61, 63). Both of those positions are incorrect.

The Family Code does not define involuntary for purposes of section 4.105. Subsection (c) expressly provides that it is the exclusive defense to

---

[8] David's affidavit was evidence that Oksana said she would testify that David had used the money for nursing care "improperly." (CR 187). It reflected other pressure from Oksana including requiring David to make her irrevocable beneficiary of an insurance policy before she would agree that the differences which prevented Johnson from representing them had been resolved. (CR 186-87).

marital contracts. Consequently the common law defenses of fraud and duress are not directly applicable. *Moore v. Moore*, 383 S.W.3d 190, 195 (Tex.App.—Dallas 2012, pet. denied). Courts may, however, consider evidence of fraud and duress to determine voluntariness. *Id*.

Oksana's position that she had a legal right to make statements to Arrowpoint Capital for the purpose of ending David's nursing benefits is wholly without merit. There was no information from any source that David had breached any agreement which resulted in the payments for nursing care. Oksana was not a party to that agreement. It was made years before she ever met David. (CR 190). An action by Oksana that affected that agreement would have been illegal because it would be tortuous interference with the contract between David and the insurance carrier. *See In re Vesta Ins. Group*, 192 S.W.3d 759, 761 (Tex. 2006). The elements of tortious interference with contract are the existence of a valid contract (CR 190), and willful and intentional interference by a stranger to the contract. *Id.* It is sufficient to show the conduct made performance of the contract more burdensome or difficult. *Seelback v. Chubb*, 7 S.W.3d 749 (Tex.App.— Texarkana 1999, pet. denied). Here the conduct would have caused substantial loss to David of the benefits of the contract.

The authority on which Oksana relied does not support her claim she had a right to threaten interference with David's contract with Arrowpoint Capital. In *Sheshunoff v. Sheshunoff*, the spouse challenging the validity of a marital agreement alleged his wife had threatened to "withdraw her loan guarantee" which would result in a lender calling the line of credit for the husband's companies. 172 S.W3d 686, 698 (Tex.App.--Austin 2005, pet. denied). In holding the trial court did not err in granting partial summary judgment on the agreement the court of appeals expressly *declined* to make a determination of whether she had a legal right to withdraw the loan guarantee.[9] 172 S.W.3d at 700 n. 19. Instead it looked at a number of other factors including: the sophistication of both parties, the fact the 37 page agreement was the third agreement between the spouses and that it had been negotiated over a period of months with the assistance of attorneys for each party. *Id*. at 699.

The other case on which Oksana relied was *Osorno v. Osorno*, 76 S. W.3d 509 (Tex.App--Houston [14th Dist.] 2002, no pet.). There a wife challenged a premarital agreement as involuntary on the basis her husband required her to sign the agreement as a condition for getting married. *Id*. at 511. Looking to contract law cases holding duress typically arises only from

_____

[9] Because she was a party to the guarantee, any action she took would not be tortuous interference with the contract. *Holloway v. Skinner*, 898 S.W.2d 793, 796 (Tex.1995).

18

a threat to do something the party has no legal right to do, the court held the husband had no legal duty to marry the wife. *Id*. Consequently, it held conditioning the husband's agreement to marry on execution of a property agreement was not duress. *Id*. This case provides no support for Oksana's position. Oksana had no legal right to threaten interference with David's contractual rights to payments for nursing care. *Compare Nesmith v. Berger*, 64 S.W.3d 110, 114 (Tex. App.—Austin 2001, pet. denied)(threat to not go on honeymoon without agreement was not duress); *Tenneco Oil Co. v. Gulsby Eng'g, Inc.*, 846 S.W.2d 599, 604 (Tex.App.—Houston [14th Dist.] 1993, writ denied)(Party had a right to withhold payment under contract and threat to do so did not make agreement involuntary), with *Martin v. Martin*, 287 S.W.3d 260 (Tex.App.—Dallas 2009, pet. denied) (threat of financial ruin if wife did not sign property agreement precluded summary judgment on enforceability of agreement). Like *Martin*, the partial summary judgment evidence here raised a material question of fact on voluntariness.

With regard to the trial court's view that there must be an "imminent threat," that is the standard applicable to the legal defense of duress in a criminal prosecution. *See McDowell v. State*, 235 S.W.3d 294, 296 (Tex. App.—Texarkana 2007, no pet.) (citing Tex. Penal Code § 8.05(a)); *Anguish*

19

*v. State*, 991 S.W.2d 883, 886 (Tex.App.—Houston [1st Dist.] 1999, pet. ref'd); *Kessler v. State*, 850 S.W.2d 217, 222 (Tex.App.—Fort Worth 1993, no pet.). That requirement has an immediacy component, the person making the threat must intend and be prepared to carry out the threat immediately. *Anguish*, 991 S.W.2d at 886. In the context of a civil proceeding, only the restraint on the party's free will must be imminent. *See Tower Contracting Co., Inc. of Tex. v. Burden Bros., Inc.*, 482 S.W.2d 330, 335 (Tex.Civ.App.—Dallas 1972 writ ref n.r.e.). *See also Cooper v. Cochran*, 288 S.W.3d 522, 533 (Tex. App.—Dallas 2009, no pet.).

Here the threats to compel execution of the agreement were economic and mental.[10] Threats which result in fear of economic injury, by an act which the party has no legal right to do, are sufficient to show duress. This has long been the governing rule in Texas as discussed in *Sanders v. Republic Nat. Bank of Dallas*, 389 S.W.2d 551 (Tex.Civ.App.—Tyler 1965, no writ). That court held:

> But where the party making the demand has, or is supposed to have, the power to injure the business or property interests of the one upon whom the demand is made, without resort to the courts to enforce the demand, and threatens to do an act which would cause such injury, and which he has no right to do, and thereby enforces compliance with his demand, against the will

---

[10] Although there was also evidence of physical threats, the summary judgment evidence was focused on the threats concerned interference or termination the monthly nursing care payments and the effect that would have on David. (CR 187).

> of such party through fear of injury to his business or property, such threats amount to duress.

*Id*. at. 554

The Dallas Court of Appeals considered a factually similar case in *Martin v. Martin*, 287 S.W.3d 260 (Tex.App.—Dallas 2009, pet. denied). There the summary judgment evidence showed the husband pressured the wife to sign an agreement transferring property under a threat that the family would be "financially ruined" by pending litigation and they would "have nothing" if she did not sign the agreement. *Id*. at 265. Although the husband had reluctantly provided financial information and the wife had consulted with her own attorney, the Court of Appeals reversed a no-evidence motion for summary judgment in favor of the husband on validity of the agreement. *Id*.

The threat to deprive David of future payments for nursing care and statements that he would be in a nursing home (CR 75-75) are the very types of threats which were held sufficient to invalidate a property transfer agreement in *Cooper*, 288 S.W.3d at 533.

The trial court erred in granting partial summary judgment for Oksana on the basis there was no evidence of an imminent threat of physical injury. (6 RR 59-60). The evidence of threats of financial injury and resulting nursing home care (CR 187-88) were sufficient to raise a question of fact on

the voluntariness of the agreement. *Martin*, 287 S.W.3d at 265; *Cooper*, 288 S.W.3d at 533; *Sanders* 389 S.W.2d at 554.

### C. The Trial Court Erred in Rendering Partial Summary Judgment for Oksana Because it Failed to Apply the Proper Statute.

Sections 4.102 of the Family Code provides that at any time spouses may "partition and exchange between themselves all or part of their community property, then existing or to be acquired." Section 4.103 authorizes an agreement between spouses that income from separate property shall remain the separate property of that spouse. Section 4.104 only requires that an agreement under the prior two sections be in writing.

The Legislature has established different procedures for converting separate property to community property. Such an agreement is not enforceable if; 1) it was not executed voluntarily or 2) the spouse did not receive a "fair and reasonable disclosure of the legal effect" of the agreement. Tex. Fam. Code § 4.206(a). The Statute goes on to provide the type of notice that is required to show adequate disclosure.

The document at issue went well beyond the partition and exchange of community property. The undisputed evidence showed the payments from Arrowpoint Capital arose from David's pre-marriage personal injury. (CR 180, 190). They were for the full-time nursing care he required. (CR 180).

22

The agreement purported to divide these payments, not only during marriage but apparently for the rest of David's life. The document purported to make a division of David's interest in the property in Junction, Texas. That was also his separate property. (CR 193).

Recovery for personal injuries also remains separate property, even if the injury occurs during marriage. Tex. Fam. Code § 3.001. *See also, Osborn v. Osborn*, 961 S.W.2d 408, 414 (Tex.App.-Houston [1st Dist.] 1997, pet. denied) (community property presumption does not apply to personal injury recovery). Here the injury occurred long before marriage and the payments during marriage were for nursing care, not loss of earning capacity. (CR 180, 190).

By attempting to make a division of separate property, the agreement was a conversion agreement governed by sections 4.201 through 4.206 of the Family Code. The disclosures contained on the agreement failed to comply with the disclosures required by section 4.205. The record shows David did not have an attorney to provide disclosures in addition to those in the document. David raised this deficiency in the agreement with the trial court. (CR 162). Because the document was not executed in compliance with sections 4.205 of the Family Code, the trial court erred in rendering partial summary judgment for Oksana.

***Point 2. The trial court erred in making a division of property which divested Appellant of separate property.***

Texas courts are prohibited from divesting spouses of separate property on divorce. *Eggemeyer v. Eggemeyer*, 554 S.W.2d 137, 140 (Tex. 1977).

The trial court's decree made an award of David's separate property, including 50 percent of any recovery in a suit brought by David to recover damages for personal injuries to David *and* 50 percent of any recovery for legal malpractice in that suit, to Oksana. (CR 783). Because there was no agreement in compliance with section 4.205 of the Family Code converting separate property to community property, the property was David's separate property at the time of the divorce. The trial court's award of that property to Oksana was error. *Eggemeyer*, *supra*.

***Point 3. The trial court erred in granting relief which went beyond the agreement sought to be enforced.***

The trial court's final judgment ordered that Oksana Robertson "shall remain the beneficiary [of life insurance insuring the life of David Robertson] and she is designated as the irrevocable beneficiary after this

24

divorce is granted." (CR 787). The property agreement on which Oksana relied, and the trial court found valid, contained no such requirement. (CR 18-32). Because the trial court held the agreement left no disputed issues for trial (7 RR 32; 8 RR 6-8), no evidence was presented to support an award beyond the terms of the agreement. (8 RR 19-21).

Consequently there was no evidence on which the trial court could have based its order designating Oksana as irrevocable beneficiary of David's life insurance policy after the divorce.[11] The order was not supported by either the pleadings or evidence and was error. Tex. R. Civ. P. 301. Moreover, it was an abuse of discretion to render an order without any evidence on which to base an exercise of discretion. *Landon v. Jean-Paul Budinger, Inc.*, 724 S.W.2d 931, 939 (Tex.App.—Austin 1987, no writ) (describing ways in which a court can abuse its discretion).

### Point 4. *The trial court erred in making a division of post-divorce income.*

The trial court's judgment required David to pay living expenses of Oksana including, *inter alia*, the mortgage on property awarded to Oksana, her vehicle insurance, utilities, pool maintenance, life insurance and health

---

[11] That restriction only existed as part of agreed temporary orders. (P.Ex. 2). Temporary orders only govern "while a suit for dissolution of marriage is pending." Tex. Fam. Code § 6.502(a).

25

insurance. (CR 786-787) There was no time limit on these payments. The decree also required David to give Oksana 50 percent of any amount remaining after payment of the living expenses. This requirement was also not limited by time. (CR 788).

Because Texas is a community property system, for most of its history Texas law did not provide for spousal support following a divorce. Post-divorce spousal maintenance was first authorized by the Legislature in 1997. *See* Tex. Fam. Code 8.051. The purpose of spousal maintenance is to provide temporary and rehabilitative support for a spouse whose ability to support themselves has eroded over time while engaged in homemaking activities and whose capital assets are insufficient to provide support. *Tellez v. Tellez*, 345 S.W.3d 689, 691 (Tex.App.—Dallas 2011, no pet.); *Deltuva v. Deltuva*, 113 S.W.3d 882, 888 (Tex.App.-Dallas 2003, no pet.).

A trial court may exercise its discretion and award spousal maintenance if the party seeking maintenance meets specific eligibility requirements. *See* Tex. Fam. Code § 8.051(2); *Pickens v. Pickens*, 62 S.W.3d 212, 214–15 (Tex.App.--Dallas 2001, pet. denied). When a divorce is sought in a marriage lasting ten years or more, a spouse is eligible to seek spousal maintenance if the spouse lacks sufficient property to meet minimum reasonable needs and cannot support himself due to an

26

incapacitating physical or mental disability. *See* Tex. Fam.Code Ann. § 8.051. The Legislature placed limitations on the term of maintenance payments based on the length of the marriage. Tex. Fam. Code § 8.054. It created exceptions for spouses who have a physical or mental disability or another "compelling impediment" to earning income for their "minimum needs." *Id*. A trial court has discretion in ordering spousal maintenance but that discretion must be exercised within the guiding rules and principles established by the Legislature. *Tellez*, 345 S.W.3d at 691.

Oksana did not file any pleading requesting spousal maintenance. The evidence showed David had severe physical disabilities and Oksana had none. There was no evidence of an impediment to providing for her own minimum needs. Moreover, there is no legislative authority in the Family Code for an agreement with regard to division of a former spouse's income after divorce.

The trial court erred in rendering a judgment that made a disposition of post-divorce income: a) without any evidence of Oksana's inability to provide for her minimum needs, b) without any time limitation. The award was an abuse of discretion because it was made without reference to the guiding rules and principles established by the Legislature.

***Point 5.  The trial court erred in awarding attorney's fees pursuant to the
property agreement in the absence of any pleadings requesting attorney's
fees under the agreement.***

The trial court's judgment awarded Oksana $27,499 in attorney's fees
"pursuant to section 8.10 of the Partition of Property and Allocation of
Income Agreement."  (CR 789).

It is fundamental that a judgment must conform to the pleadings and
the nature of the case proved.  Tex. R. Civ. P. 301; *Cunningham v. Parkdale
Bank*, 660 S.W.2d 810, 813 (Tex. 1983).  A judgment may not grant a party
more relief than requested in the pleadings with very limited exceptions.
Tex. R. Civ. P. 67, 301; *Hartford Fire Ins. Co. v. C. Springs 300, Ltd.*, 287
S.W.3d 771, 779 (Tex.App.—Houston [1st Dist.] 2009, pet. denied).  This
rule is applicable to an award of attorneys' fees.  *Rivera v. Countrywide
Home Loans, Inc.*, 262 S.W.3d 834, 842 (Tex.App.—Dallas 2008, no pet.).
A judgment which does not conform to the pleadings must be reversed on
appeal.  *Oil Field Haulers Ass'n v. Railroad Comm'n,* 381 S.W.2d 183, 191
(Tex. 1964).

Oksana's live pleadings sought attorney's fees "to effect an equitable
division of the estate of the parties."  (CR5).  It did not request attorney's
fees pursuant to the agreement.  Section 8.10 of the property agreement
provided for an award of attorney's fees if a party "brings an action or other

28

proceeding to enforce this agreement." (CR 23). David objected to the absence of any pleadings seeking to recover attorney's fees under the agreement. (8 RR 10).

Moreover, recovery of attorney's fees for a suit on a contract is also governed by Chapter 38 of the Civil Practice and Remedies Code. Section 38.002 establishes prerequisites to recovery of attorney's fees under that Chapter. There must be a demand for payment and the failure to pay for 30 days. Tex. Civ. Prac. & Rem. Code § 38.002. There was no evidence of a demand.

The trial court erred in awarding attorney's fees under the property agreement because there were no pleadings to support that award and no evidence of compliance with Chapter 38 of the Civil Practice and Remedies Code.

## PRAYER FOR RELIEF

Appellant prays this court reverse the judgment of the trial court and remand the case for trial on the merits before a jury. Appellant also prays the court tax costs against appellee. Tex. R. App. P. 43.4.

Respectfully submitted:

_/s/ Clint Sare_____
Clint F. Sare
Texas Bar Num. 788354

P.O. Box 1694
Bryan Texas, 77806
(979) 822-1505

## CERTIFICATE OF COMPLIANCE
### WITH BRIEF LIMITATIONS AND SERVICE

I certify the foregoing document does not exceed the word count limitation of Rule of Appellate Procedure 9.4(i) based on the computer software word count of 6760 words.

I certify a copy of appellant's brief was served on counsel for appellee by electronic service on April 9, 2015.

_/s/  Clint Sare_____
Clint F. Sare

**APPENDIX**

Appendix A.                Marital Property Agreement

Appendix B.                Order Granting Partial Summary

Appendix C.                Final Judgment

Appendix D.                Family Code § 4.105

31

Appendix A

# PARTITION OF PROPERTY AND ALLOCATION OF INCOME AGREEMENT

The parties to this Partition of Property and Allocation of Income Agreement are DAVID ROBERTSON ("Husband") and OKSANA ROBERTSON ("Wife") of Nueces County, Texas

## *Stipulations*

1. The parties are entering into this Agreement in accordance with article XVI, section 15, of the Texas Constitution, as amended, and relevant sections of the Texas Family Code, as amended.

2. The parties acknowledge and agree that they are making and entering into this Agreement voluntarily and without the intention to defraud or prejudice preexisting creditors or each other.

3. The parties own certain real and/or personal property and are recipients of monthly income as described in Schedules A, B and C, which are attached to this Agreement. The parties intend by this agreement to partition or exchange those properties between themselves and to establish the protocol for paying their monthly expenses out of the income described in Schedule C. The Parties also intend to continue to own property jointly. A partial list of those items is set out in Schedule D.

5. The parties intend to clarify their respective property rights to eliminate any uncertainty about those rights.

In consideration of the mutual promises, agreements, partitions, exchanges, releases, and waivers contained in this agreement and in consideration of the parties' desire to establish certain rights and obligations by this agreement, and with the intent to be fully bound by the terms of this agreement, the parties covenant, agree, and contract as follows:

### *Article 1*
### *Statement of Facts*

**1.1** *Property of Parties*

Husband and Wife own certain estate, real, personal and mixed, described in Schedules A and B attached to this agreement.

_____
*Initials of DAVID ROBERTSON*

*O.R.*
_____
*Initials of OKSANA ROBERTSON*

*1*

18

## 1.2 *Disclosure*

Each party represents and warrants to the other party that he or she has, to the best of his or her ability, made to the other party a complete and accurate, fair and reasonable disclosure of the nature and extent of the community property of the parties, including values, and financial obligations, contingent or otherwise, and other documentation exchanged between the parties before their execution of this agreement. Each party additionally acknowledges that he or she has been provided a fair and reasonable disclosure of the community property and financial obligations of the parties before the execution of this agreement. Further, and before the execution of this agreement, each party has previously offered to provide, or has provided, to the other party all information and documentation pertaining to all community property, including income and value, and all financial obligations that have been requested by the other party. Each party acknowledges that he or she has, or reasonably could have had, full and complete knowledge of the community estate of the parties and of all financial obligations of the community estate of the parties.

### Article 2
### Partition of Property

### 2.1 *Property Partitioned to Husband*

The parties agree that Husband will own, possess, and enjoy as his sole and separate estate, free from any claim of Wife, the property listed in Schedule A, which is attached to this agreement and incorporated in it for all purposes. Wife partitions and exchanges to Husband all her community-property interest in and to all the property listed in Schedule A, together with any insurance policies covering the property and any escrow accounts that relate to it. Wife grants, releases, and confirms to Husband and to his heirs and assigns all right, title, and interest in and claims to the property listed in Schedule A, to have and to hold the same, with all and singular the hereditaments and appurtenances thereto belonging forever.

### 2.2 *Property Partitioned to Wife*

The parties agree that Wife will own, possess, and enjoy as her sole and separate estate, free from any claim of Husband, the property listed in Schedule B, which is attached to this agreement and incorporated in it for all purposes. Husband partitions and exchanges to Wife all his community-property interest in and to all the property listed in Schedule B, together with any insurance policies covering the property and any escrow accounts that relate to it. Husband grants, releases, and confirms to Wife and to her heirs and assigns all right, title, and interest in and claims to the property listed in Schedule B, to have and to hold the same, with all and singular the hereditaments and appurtenances thereto belonging forever.

### Article 3

_____
Initials of DAVID ROBERTSON

_____
Initials of OKSANA ROBERTSON

2

19

### 3.1    *Income from Husband's Separate Property*

Except as noted below, Wife agrees that all income, changes, mutations, and increases in kind or in value of Husband's separate property following the execution of this agreement and all property that he may hereafter acquire, including all property acquired as a result of the reinvestment of income from his separate property, will be the separate property of Husband. Income from separate property includes but is not limited to interest, rents, royalties, stocks, splits, and dividends. Wife forever releases, relinquishes, and renounces any interest in such income, changes, mutations, and increases in kind or in value derived from Husband's separate property, including all property acquired as a result of the reinvestment of income from his separate property, in consideration of Husband's reciprocal agreement and release, relinquishment, and renunciation. All future earnings and income arising from Husband's separate property will be the separate property of Husband unless the parties agree in writing to the contrary.

### 3.2    *Income from Wife's Separate Property*

Husband agrees that all income, changes, mutations, and increases in kind or in value of Wife's separate property following the execution of this agreement and all property that he may hereafter acquire, including all property acquired as a result of the reinvestment of income from his separate property, will be the separate property of Wife. Income from separate property includes but is not limited to interest, rents, royalties, stocks, splits, and dividends. Husband forever releases, relinquishes, and renounces any interest in such income, changes, mutations, and increases in kind or in value derived from Wife's separate property, including all property acquired as a result of the reinvestment of income from her separate property, in consideration of Wife's reciprocal agreement and release, relinquishment, and renunciation. All future earnings and income arising from Wife's separate property will be the separate property of Wife unless the parties agree in writing to the contrary.

### 3.3    *Waiver of Claims*

Each party agrees that the property being partitioned and exchanged between the parties as their respective separate property will be free from all claims that the other party may have before the date of this agreement, as well as all claims that may arise following the execution o this agreement. Any money used for the benefit of the other party will be presumed to be a gift to the other party, as contrasted with a payment for which reimbursement or repayment is later expected, unless the parties agree otherwise in writing. This waiver applies during the lifetime of both parties, as well as on the death of either or both parties. This waiver extends to any rights, whether choate or inchoate, that may arise under the laws of Texas or any other jurisdiction. Each party further agrees that, by signing this agreement and accepting any benefit whatsoever under it, he or she is estopped from making any claim of any kind at any time to any separate property or the

_____
Initials of DAVID ROBERTSON

_____
Initials of OKSANA ROBERTSON

3

20

separate estate of the other party, except as may expressly be provided for in this agreement.

### Article 4
### Management of Properties

#### 4.1 Management of Properties

Each party has the full, free, and unrestricted right to manage the separate property over which he or she has control under section 3.101 of the Texas Family Code or succeeding provisions of similar import and nature, including without limitation the right to convey or encumber the property; to dispose of it by sale, gift, or otherwise; and to deal with it without taking into consideration any rights or interests of the other party. If the joinder of DAVID ROBERTSON or OKSANA ROBERTSON ("joining party") should be required by law in connection with the execution of any document by the other party with respect to the separate property of the other party, on request and from time to time, the joining party must execute all such documents necessary to effect the desires of the other party, including gift tax returns, but without any personal liability of the joining party. Neither party has the authority to encumber or dispose of the other party's separate property without the other party's express written consent.

### Article 5
### Reimbursement

#### 5.1 No Reimbursement Claims

Husband waives the right to assert any claim for reimbursement that he might presently or in the future have on behalf of or against the community estate. Husband further waives the right to assert any claim for reimbursement that he might presently or in the future have against the separate estate of Wife.

Wife waives the right to assert any claim for reimbursement that she might presently or in the future have on behalf of or against the community estate. Wife further waives the right to assert any claim for reimbursement that she might presently or in the future have against the separate estate of Husband.

### Article 6
### Economic Contributions

#### 6.1 No Claims for Economic Contribution

Husband waives the right to assert any claim for economic contribution, as defined by the Texas Family Code, that he might presently or in the future have on behalf of or against the community estate. Husband further waives the right to assert any claim for economic contribution, as defined by the Texas Family Code, that he might presently or in the future have against the separate estate of Wife.

_____
Initials of DAVID ROBERTSON

_____
Initials of OKSANA ROBERTSON

Wife waives the right to assert any claim for economic contribution, as defined by the Texas Family Code, that she might presently or in the future have on behalf of or against the community estate. Wife further waives the right to assert any claim for economic contribution, as defined by the Texas Family Code, that she might presently or in the future have against the separate estate of Husband.

## Article 7
### Undisclosed Property and Jointly Owned Property

All community property not listed in schedule A or B attached to this agreement is owned by the parties as equal cotenants with right of survivorship. Each party hereby grants, conveys, and assigns to the other party an undivided one-half interest in any such unlisted community property owned in the name of the granting party. A partial list of the significant community property remaining is identified as Schedule D. Husband also agrees that he will not change his will dated July 16, 2010 without the agreement of Wife.

## Article 8
### Other Provisions

### 8.1    Conflict Resolution

The Parties acknowledge that from time to time there may be disputes between them in the interpretation of this agreement and agree that they will resolve those differences in a civil manner. If the Parties cannot reach a resolution of a conflict they agree to avail themselves to the mediation process prior to the institution of legal proceedings.

### 8.2    Entire Agreement

Each party has carefully read this agreement, including all schedules attached to it and other documents to which it refers, and has executed it in reliance on the party's own judgment. This agreement expresses the entire agreement between the parties concerning the subject it purports to cover.

### 8.3    Incorporation of Schedules

All schedules and other instruments referred to in this agreement are incorporated into this agreement as completely as if they were copies verbatim in the body of it.

### 8.4    Partial Invalidity

If any provision of this agreement is for any reason found to be unenforceable, all other provisions nonetheless remain enforceable.

_____
Initials of DAVID ROBERTSON
5

_O. R._
_____
Initials of OKSANA ROBERTSON
22

## 8.5 *Enforceability*

This agreement may be enforced by suit in law or equity by either of the parties or by their heirs, executors, attorneys, or assigns. Each party agrees that, by signing this agreement and accepting any benefit whatsoever under it, he or she is estopped and barred from making any claim of any kind at any time to any separate property or the separate estate of the other party or to any property described in this agreement as being the separate property of the other party. Each party waives his or her right to make claims to any separate property of the other party or to any property designated as belonging to the separate estate of the other party, whether the property is acquired before or after this agreement is signed.

## 8.6 *Successors*

This agreement binds and inures to the benefit of the parties and their respective legatees, devisees, heirs, executors, legal and personal representatives, assigns, transferees, and successors in interest.

## 8.7 *Amendment or Modification*

This agreement may be waived, abandoned, modified, amended, discharged, or terminated only by a written instrument signed by both parties that specifically identifies the waiver, abandonment, modification, amendment, discharge, or termination.

## 8.8 *Effective Date*

This agreement takes effect when it is executed by both parties and will remain in effect even when the parties' marriage is dissolved by death or otherwise.

## 8.9 *Execution of Documents*

Each party agrees to cooperate fully with the other in performing all acts and in executing, acknowledging, and delivering all instruments and documents required to accomplish the intent of this agreement, including but not limited to deeds, assignments, and promissory notes. Each party agrees to execute all documents required to accomplish the intent of this agreement within fourteen (14) days after the documents are presented to the party for execution.

## 8.10 *Attorney's Fees and Expenses for Enforcement*

If either party defaults in performing any obligation under this agreement so that the other party is required to engage the services of an attorney for enforcement or relief, or if either party brings an action or other proceeding to enforce this agreement or to enforce any judgment, decree, or order made by a court in connection with this agreement, the defaulting party must pay all reasonable attorney's fees, expert's fees, and other costs of the other party.

---

*Initials of DAVID ROBERTSON*

*O. R.*
*Initials of OKSANA ROBERTSON*

6

23

## 8.11 *Waiver of Breach or Term*

The waiver of any breach of any provision of this agreement does not waive any other breach of that or any other provision. Waiver of any term of this agreement may be accomplished only concerning future performance and only by a written instrument signed by both parties expressly stating the provisions waived.

## 8.12 *Titles and Captions*

Article headings, titles, and captions contained in this agreement are merely for reference and do not define, limit, extend, or describe the scope of this agreement or any provision.

## 8.13 *Representation*

Duncan Neblett, Jr. is the attorney who has prepared this agreement. However he is not representing either party, but has relied only on the information given to him by the Parties.

## 8.14 *Place of Performance and Governing Law*

All rights, duties, and obligations under this agreement are payable and enforceable in Nueces County, Texas. This agreement must be construed, and its performance enforced, under Texas law.

## 8.15 *Multiple Originals*

This agreement is executed in multiple originals. This agreement is signed after execution of the Waiver of Disclosure of Financial Information.

*Article9*
*Representations and Warranties*

### WARNING

EACH PARTY TO THIS AGREEMENT UNDERSTANDS THAT BY SIGNING THIS DOCUMENT HE OR SHE IS PERMANENTLY SURRENDERING RIGHTS AND CLAIMS HE OR SHE WOULD OTHERWISE HAVE UNDER TEXAS LAW AND UNDER THE LAW OF OTHER JURISDICTIONS.

## 9.1 *Representations and Warranties of Husband*

My name is DAVID ROBERTSON. I represent and warrant that:

_____
*Initials of DAVID ROBERTSON*

7

_____
*Initials of OKSANA ROBERTSON*

24

1. I have carefully read each and every page of this agreement and the scheduled attached or referred to, in their entirety.

2. I have been advised by attorney Duncan Neblett Jr. about the law relating to the subject matter of this agreement and about the spousal rights and liabilities of both Parties. I acknowledge that he has advised me some of the provisions of this agreement may not be enforceable.

3. I AM ENTERING INTO THIS AGREEMENT VOLUNTARILY.

4. I have given careful and mature thought to the making of this agreement.

5. I fully and completely understand each provision of this agreement, concerning both the subject matter and the legal effect. I further acknowledge that this agreement was not procured by fraud, duress, or overreaching.

6. I have investigated the property and financial obligations of OKSANA ROBERTSON sufficiently to satisfy any questions I have in that regard, and I expressly waive any right to disclosure of the property and financial obligations of OKSANA ROBERTSON beyond the disclosures provided.

7. I fully understand that, by signing this agreement and accepting any benefit whatsoever under it, I will be estopped from making any claim of any kind at any time to any separate property or the separate estate of OKSANA ROBERTSON, except as expressly provided for in this agreement.

8. I fully understand that by executing this agreement I may be adversely affecting my inheritance rights and property and that I am permanently surrendering right to income and property I would otherwise have under Texas law.

9. I am executing this agreement with intent to be bound fully by all its terms.

_____
DAVID ROBERTSON

### 9.2 *Representations and Warranties of Wife*

My name is OKSANA ROBERTSON. I represent and warrant that:

_____
*Initials of DAVID ROBERTSON*
8

_____
*Initials of OKSANA ROBERTSON*
25

1. I have carefully read each and every page of this agreement and the scheduled attached or referred to, in their entirety.

2. I have been advised by attorney Duncan Neblett Jr. about the law relating to the subject matter of this agreement and about the spousal rights and liabilities of both Parties. I acknowledge that he has advised me some of the provisions of this agreement may not be enforceable.

3. I AM ENTERING INTO THIS AGREEMENT VOLUNTARILY.

4. I have given careful and mature thought to the making of this agreement.

5. I fully and completely understand each provision of this agreement, concerning both the subject matter and the legal effect. I further acknowledge that this agreement was not procured by fraud, duress, or overreaching.

6. I have investigated the property and financial obligations of DAVID ROBERTSON sufficiently to satisfy any questions I have in that regard, and I expressly waive any right to disclosure of the property and financial obligations of DAVID ROBERTSON beyond the disclosures provided.

7. I full understand that, by signing this agreement and accepting any benefit whatsoever under it, I will be estopped from making any claim of any kind at any time to any separate property or the separate estate of DAVID ROBERTSON, except as expressly provided for in this agreement.

8. I fully understand that by executing this agreement I may be adversely affecting my inheritance rights and property and that I am permanently surrendering right to income and property I would otherwise have under Texas law.

9. I am executing this agreement with intent to be bound fully by all its terms.

*Oksana Robertson*
OKSANA ROBERTSON

EXECUTED in multiple originals on the dates at the times of the acknowledgements shown below.

STATE OF TEXAS        §
'COUNTY OF NUECES      §

_____
Initials of DAVID ROBERTSON
9

O. R.
_____
Initials of OKSANA ROBERTSON
26

This instrument was acknowledged before me at ___3:00___ P.M. on ___July 12___, 2012 by DAVID ROBERTSON.

ERIN A. JOHNSON
Notary Public, State of Texas
My Commission Expires
June 08, 2015

_____
NOTARY PUBLIC, State of Texas

I, the notary public whose signature appears above, certify that I am not an attorney representing either party to this agreement.

_____

STATE OF TEXAS          §
COUNTY OF NUECES        §

This instrument was acknowledged before me at ___3:00___ P.M. on ___July 12___, 2012 by OKSANA ROBERTSON.

ERIN A. JOHNSON
Notary Public, State of Texas
My Commission Expires
June 08, 2015

_____
NOTARY PUBLIC, State of Texas

I, the notary public whose signature appears above, certify that I am not an attorney representing either party to this agreement.

_____

_____
*Initials of DAVID ROBERTSON*
*10*

_____
*Initials of OKSANA ROBERTSON*
*27*

# Schedule A

## Property to Husband

1. Real Property, improvements, furniture and furnishings located in Junction, Texas

2. Lots 21-24 block 15, Ocean Drive, Corpus Christi, Texas

3. Handicap-equipped Van

4. All fire arms in his possession or control

5. USAA Account # 01394-8838-3 and any other bank account solely in his name

6. $3,000 in silver coins and $3000 in gold coins purchased prior to marriage

7. Any property acquired prior to marriage

8. Monthly Social Security checks currently in the monthly amount of $426.00

9. $139/week received as Workman's Compensation benefits

_____
*Initials of DAVID ROBERTSON*

*O. R.*
_____
*Initials of OKSANA ROBERTSON*

28

# Schedule B

## Property to Wife

1. Real property and improvements including furniture, furnishings and fixtures located at 13729 Three Fathoms Bank, Corpus Christi, Texas

2. Cadillac automobile

3. Account #0310085950 at American Bank

   Account #807760927 at First Victoria Bank and any other other bank account solely in her name

4. Gold coins and jewelry

5. All "massage" business income

6. Any property acquired prior to marriage

_Initials of DAVID ROBERTSON_

_1_

_O. R._

_Initials of OKSANA ROBERTSON_

# Schedule C

## Identification and Expense Allocation of Monthly Income received from Arrowpoint Capital (currently $22,674.00/Mo)

This income shall be deposited monthly in a community account and from it the following payments shall be promptly made. For illustration purposes payee and approximate current payment amounts are used; however the Parties expressly agree that these payments will change both in amount and payee depending upon circumstance. However it is the Parties intention to provide for the payment their regular living expenses pursuant to this arrangement:

Monthly Expense:

| | |
|---|---|
| Allstate (vehicle insurance) | $359.75 |
| City of Corpus Christi (gas, water etc.) | $164.60 |
| Green Mountain (electricity) | $488.83 |
| Pool Maintenance | $120.00 |
| Wells Fargo (Ocean Drive) | $880.00 |
| Frost Bank (Ocean Drive) | $2052.14 |
| Safeguard (security) | $21.65 |
| Bank of America (Three Fathoms Bank) | $2338.94 |
| Maintenance (Ocean Drive Lot) | $60.00 |
| U.S. Financial (insurance) | $397.41 |
| W.F. Loen (insurance) | $233.27 |
| American General (insurance) | $55.22 |
| Humana Insurance (insurance) | $495.36 |

_____
Initials of DAVID ROBERTSON

_____
Initials of OKSANA ROBERTSON

30

Schedule C Cont.

| | |
|---|---|
| Vonage | $30.00 |
| Time Warner (cable) | $92.12 |
| Frost Bank  (van payment) | $777.00 |
| Actava (cable) | $14.95 |
| On Star | $31.28 |

Visa-Frost- to be used only for food and gasoline for each party

LVN and Companion Care for David [$5600/mo if David not living with Wife- $2000/mo if living at home]

The Parties also agree that the annual advalorum taxes on the property located on Ocean Drive, Corpus Christi, Texas (currently $6800 per annum) and college expenses of their son Kostyantyn (currently about $5600 per annum after scholarship) shall be paid from this source.

The Balance shall be divided 50%- 50% to each party and shall become that party's separate property.

In the event that the Parties divorce this income allocation will not change.

_____
*Initials of DAVID ROBERTSON*
2

_____O. R._____
*Initials of OKSANA ROBERTSON*

31

# Schedule D

## Partial list of jointly owned property

1. Silver coins except approximately $3000 in coins purchased prior to marriage

2. Any proceeds from Cause No. 09-712-G David Robertson Vs. Arrowpoint Capital Corporation – 319th District Court, Nueces County, Texas and in claim against attorney Daniel Horne arising out of his handling of that claim.

_Initials of DAVID ROBERTSON_

_O. R._

_Initials of OKSANA ROBERTSON_

1

Appendix B

# IN THE DISTRICT COURT
# OF NUECES COUNTY, TEXAS
# THE 148ᵗʰ JUDICIAL DISTRICT OF TEXAS

IN THE MATTER OF      §
THE MARRIAGE OF      §
     §
OKSANA ROBERTSON      §     **CAUSE NO. 2013-FAM-2820-E**
AND      §
DAVID ROBERTSON      §

## RULING ON MOTION FOR PARTIAL SUMMARY JUDGMENT

On the 9ᵗʰ day of June, 2014, the Court considered the Motion for Partial Summary Judgment filed by the Petitioner, OKSANA ROBERTSON, in the above cause.

The Court, after having considered the Motion for Partial Summary Judgment, Respondent's Response to Petitioner's Motion for Partial Summary Judgment, and the argument of Counsel is of the opinion ~~that there is no disputed question of fact which could effect the validity of the Marriage Contract executed between the parties.~~ *And* C~~e~~t

IT IS THEREFORE ORDERED that Petitioner's Motion For Partial Summary Judgment is GRANTED and the Marriage Contract executed by and between the parties on July 12, 2012 and entitled "Partition Of Property and Allocation Of Income Agreement" is valid and binding upon the parties and shall be enforced according to its terms.

SIGNED THIS *27th* DAY OF JUNE, 2014.

_____
Presiding Judge

Page 1 of 1

9

Appendix C

# IN THE DISTRICT COURT
# OF NUECES COUNTY, TEXAS
# THE 148th JUDICIAL DISTRICT OF TEXAS

| | | |
|---|---|---|
| IN THE MATTER OF | § | |
| THE MARRIAGE OF | § | |
| | § | |
| OKSANA ROBERTSON | § | CAUSE NO. 2013-FAM-2820-E |
| AND | § | |
| DAVID ROBERTSON | § | |

## FINAL DECREE OF DIVORCE

On the 7th day of July, 2014 the above styled Cause came on for final hearing.

*Appearances*

Petitioner, OKSANA ROBERTSON, appeared in person and by and through attorney of record, Michael P. O'Reilly, and announced ready for trial.

Respondent, DAVID ROBERTSON, appeared in person and by and through attorney of record, William Bloodworth, II, and announced ready for trial.

*Record*

The record of testimony was recorded by the official court reporter of the 148th District Court.

*Jurisdiction and Domicile*

The Court finds that the pleadings of Petitioner are in due form and contain all the allegations, information, and prerequisites required by law. The Court, after receiving evidence, finds that it has jurisdiction of this case and of all the parties and that at least sixty days have elapsed since the date the suit was filed.

Page -1-

782

The Court further finds that, at the time this suit was filed, Petitioner had been a domiciliary of Texas for the preceding six-month period and a resident of the county in which this suit was filed for the preceding ninety-day period. All persons entitled to citation were properly cited.

*Jury*

There were no jury issues, and questions of fact and of law were submitted to the Court.

*Divorce*

IT IS ORDERED AND DECREED that OKSANA ROBERTSON, Petitioner, and DAVID ROBERTSON, Respondent, are divorced and that the marriage between them is dissolved on the ground of insupportability.

*Child of the Marriage*

The Court finds that there is no child of the marriage of Petitioner and Respondent under 18 years of age and that none is expected.

*Findings*

The Court finds that the parties executed a <u>PARTITION OF PROPERTY AND ALLOCATION OF INCOME AGREEMENT</u> on July 12, 2012 and that such Partition Agreement is binding and enforceable according to its terms. Pursuant to the terms of that Partition Agreement,

IT IS ORDERED as follows:

<u>Wife's Separate Property</u>

The Court finds, and IT IS ORDERED that the following items are the sole and separate property of the Petitioner, OKSANA ROBERTSON.

Page -2-

783

1. The real property and improvements including furniture, furnishings and fixtures located at 13729 Three Fathoms Bank, Corpus Christi, Nueces County, Texas.

2. Cadillac automobile.

3. Account No. XXXXXX5950 at American Bank, Account No. XXXXX0927 at First Victoria Bank, and any other bank account solely in her name.

4. Gold coins and Jewelry.

5. 50% of the Silver coins, except approximately $3,000. in coins purchased by Respondent prior to the marriage.

6. All "massage" business income.

7. 50% of any proceeds from Cause No. 09-712-G; David Robertson vs. Arrowpoint Capital Corporation in the 319th District Court of Nueces County, Texas.

8. 50% of any proceeds from a claim against attorney Daniel Horne arising out of his handling of the Arrowpoint Capital case.

9. Any property acquired by OKSANA ROBERTSON prior to the marriage.

10. All other personal property in Petitioner's possession or subject to her control.

11. 50% of the net proceeds from the monthly Arrowpoint Capital check after the payment of the bills set out below.

Page -3-

Husband's Separate Property

The Court finds, and IT IS ORDERED that the following items are the sole and separate property of the Respondent, DAVID ROBERTSON.

1.      The real property, improvements including furniture, furnishings and fixtures located in Junction, Texas.

2.      Lots 21-24 Block 15, Ocean Drive, Corpus Christi, Texas

3.      Handicap-equipped Van.

4.      All fire arms in his possession or control.

5.      Account No. XXXXXX8383 at USAA Bank, any other bank account solely in his name.

6.      $3,000. in Silver coins and $3,000. in Gold coins purchased prior to marriage.

7.      50% of the Silver coins, (except approximately $3,000.00 in coins purchased by Respondent prior to the marriage which are already in Respondent's possession).

8.      50% of any proceeds from Cause No. 09-712-G; David Robertson vs. Arrowpoint Capital Corporation in the 319th District Court of Nueces County, Texas.

9.      50% of any proceeds from a claim against attorney Daniel Horne arising out of his handling of the Arrowpoint Capital case.

10.     Any property acquired by DAVID ROBERTSON prior to the marriage.

11.     Monthly Social Security checks currently in the amount of $426.00.

12. $139.00 per week received as Workman's Compensation benefits.

13. All other personal property in Respondent's possession or subject to his control.

14. 50% of the net proceeds from the monthly Arrowpoint Capital check after the payment of the bills set out below.

## Allocation of Monthly Income Received From Arrowpoint Capital

Pursuant to the Partition Agreement executed between the parties, IT IS ORDERED that the monthly check received by DAVID ROBERTSON from Arrowpoint Capital shall be caused to be direct deposited into a joint account held in the names of DAVID ROBERTSON and OKSANA ROBERTSON. IT IS ORDERED that DAVID ROBERTSON, on or before July 15, 2014, shall open a joint account in the name of both parties and shall immediately provide OKSANA ROBERTSON with all details of such account, including but not limited to, the name of the financial institution, the number of the account, a signature card so that her signature may be on the account, all passwords to allow her full and complete access to said account.

IT IS FURTHER ORDERED that DAVID ROBERTSON ~~immediately cause the monthly~~ *SHALL TIMELY PAY* ~~Arrowpoint Capital check to be deposited by direct deposit into the joint account and from said account which is to receive the monthly Arrowpoint Capital check,~~ the following bills ~~will be paid~~ each month:

1. Allstate (vehicle insurance for both parties vehicle)

2. City of Corpus Christi (gas, water, garbage, etc. for 13729 Three Fathoms Bank, Corpus Christi, Nueces County, Texas)

Page -5-

786

3. Green Mountain (electricity for 13729 Three Fathoms Bank, Corpus Christi, Nueces County, Texas)

4. Pool Maintenance for 13729 Three Fathoms Bank, Corpus Christi, Nueces County, Texas

5. Wells Fargo (mortgage on Ocean Drive)

6. Frost Bank (mortgage on Ocean Drive)

7. Safeguard (security for 13729 Three Fathoms Bank, Corpus Christi, Nueces County, Texas)

8. Bank of America (mortgage for 13729 Three Fathoms Bank, Corpus Christi, Nueces County, Texas)

9. Maintenance on Ocean Drive lot

10. U.S. Financial (life insurance insuring the life of David Robertson, where Oksana Robertson is the irrevocable beneficiary), and Oksana Robertson shall remain beneficiary, and she is designated as the irrevocable beneficiary after this divorce is granted.

11. Wells Fargo Loan (life insurance)

12. American General (life insurance insuring the life of Oksana Robertson, where David Robertson is the irrevocable beneficiary), and David Robertson shall remain beneficiary, and he is designated as the irrevocable beneficiary after this divorce is granted.

13. Humana Insurance (health insurance)

14. Vonage

15. Time Warner Cable ( for 13729 Three Fathoms Bank, Corpus Christi, Nueces County, Texas

16. Frost Bank (van payment)

17. Actava (cable)

18. On Star

19. LVN and Companion Care for DAVID ROBERTSON

Page -6-

787

Annual or Bi-Annual Payments

IT IS FURTHER ORDERED that from the proceeds deposited into the joint account set out above shall be paid the following annual or semi-annual payments:

1. advalorum taxes on the property located on Ocean Drive, Corpus Christi, Nueces County, Texas.

2. the college expenses of the parties son Kostyantyn.

After the payment of all monthly, annual, and semi annual payments set out above, IT IS ORDERED that the remaining balance in the joint account shall be paid 50% to Petitioner, OKSANA ROBERTSON and 50% to Respondent, DAVID ROBERTSON (for purposes of maintaining the joint checking account, a $500.00 minimum balance should remain in the account (and not be distributed).

Division of Debt

Debts to Wife

IT IS ORDERED AND DECREED that the wife, OKSANA ROBERTSON, shall pay, as a part of the division of the estate of the parties, and shall indemnify and hold the husband and his property harmless from any failure to so discharge, these items:

W-1. Any and all debts incurred solely by wife during the marriage not otherwise allocated herein.

Debts to Husband

IT IS ORDERED AND DECREED that the husband, DAVID ROBERTSON, shall pay, as a part of the division of the estate of the parties, and shall indemnify and hold the wife and her property harmless from any failure to so discharge, these items:

788

H-1. Any and all debts incurred solely by husband during the marriage not otherwise allocated herein.

*Attorneys Fees*

Pursuant to section 8.10 of the Partition Of Property and Allocation of Income Agreement, the Court finds that Petitioner, OKSANA ROBERTSON, has incurred necessary and reasonable attorneys fees in the amount of $27,499.00. Furthermore, pursuant to the Partition Agreement executed between the parties, the recovery of such attorneys fees by Petitioner, OKSANA ROBERTSON, against Respondent, DAVID ROBERTSON, is mandatory.

IT IS THEREFORE ORDERED that Petitioner, OKSANA ROBERTSON, have judgment against Respondent, DAVID ROBERTSON, in the sum of $27,499.00 for her reasonable and necessary attorneys fees incurred herein. Such judgment shall bear interest at the rate of 5% per annum from the date of the entry of this Order.

In the event that Petitioner shall prevail in the appeal of this matter, IT IS ORDERED that Petitioner, OKSANA ROBERTSON, have additional Judgment against Respondent, DAVID ROBERTSON, for her reasonable and necessary attorneys fees in the following amounts:

1. For briefing in the Court of Appeals $15,000.00.

2. For representation through oral argument and the completion of proceedings in the Court of Appeals $8,000.00.

3. For representation at the Petition for Review stage in the Supreme Court of Texas $8,000.00.

4. For representation at the Merits Briefing stage in the Supreme Court of Texas $15,000.00.

Page -8-

5.   For representation through oral argument and completion of proceedings in the Supreme Court of Texas $8,000.00.

*Prior Judgments*

During the pendency of this trial, (with a hearing on June 9, 2014 and the Order signed on June 27, 2014) this Court granted a Judgment against DAVID ROBERTSON and in favor of OKSANA ROBERTSON in the sum of $9,163.04. Furthermore, this Court Ordered said Judgment to be paid by DAVID ROBERTSON to OKSANA ROBERTSON on or before 5:00 p.m. on June 24, 2014. The Court finds that the payment of that Judgment has not been made and is still due and owing. IT IS THEREFORE ORDERED that Judgment is hereby affirmed against DAVID ROBERTSON and in favor of OKSANA ROBERTSON in the sum of $9,163.04 bearing interest at the rate of 5% per annum commencing on June 25, 2014.

Additionally, by pronouncement from the bench on June 9, 2014 and by Order signed on June 27, 2014, this Court further Ordered DAVID ROBERTSON to pay attorneys fees to Michael P. O'Reilly in the sum of $1,200.00. This amount was Ordered to be paid on or before 5:00 p.m. on August 8, 2014. The Court finds that said sum has not yet been paid (it is not yet due) and failing payment on or before 5:00 p.m. on August 8, 2014, as Ordered then JUDGMENT IS ENTERED against DAVID ROBERTSON and in favor of Michael P. O'Reilly in the sum of $1,200.00 said judgment to bear interest at the rate of 5% per annum from and after August 9, 2014.

*Direction to Execute Instruments*

Respondent, DAVID ROBERTSON, is ORDERED to appear in the law offices of William Bloodworth, II at 1012 University Avenue, Huntsville, Texas 77320 within 10 days of the receipt

Page -9-

of the documents from attorney for Petitioner, and to execute, have acknowledged, and deliver to OKSANA ROBERTSON by and through her attorney of record, Michael P. O'Reilly at 500 N. Shoreline, Suite 604N, Corpus Christi, Texas 78401 the following instruments:

1. Special Warranty Deed in favor of OKSANA ROBERTSON on the property located at 13729 Three Fathoms Bank, Corpus Christi, Texas.

2. All documents necessary to give OKSANA ROBERTSON full and complete access to both mortgages which are currently secured by the real property located at 13729 Three Fathoms Bank, Corpus Christi, Texas including but not limited to the name of the lender, the account number, the loan number, and any passwords necessary to access and determine the status of each account.

3. All necessary assignment of utilities forms for 13729 Three Fathoms Bank, Corpus Christi, Texas.

4. Assignment of insurance coverage on 13729 Three Fathoms Bank, Corpus Christi, Texas.

5. Assignment of any policy of insurance of which Petitioner, OKSANA ROBERTSON, is the irrevocable beneficiary.

Petitioner, OKSANA ROBERTSON, is ORDERED to appear in the law offices of Michael P. O'Reilly at 500 N. Shoreline, Suite 604N, Corpus Christi, Texas 78401 within 10 days of the receipt of the documents from attorney for Respondent, and to execute, have acknowledged, and deliver to DAVID ROBERTSON by and through his attorney of record, William Bloodworth, II at 1012 University Avenue, Huntsville, Texas 77320 the following instruments:

1. Quitclaim Deed to the lots on Ocean Drive, Corpus Christi, Texas.

2 Quitclaim Deed to the real property located in Junction, Texas.

3. Assignment of any utility deposits on any real estate awarded to Respondent, DAVID ROBERTSON.

4. Assignment of any policy of insurance of which Respondent, DAVID ROBERTSON is the irrevocable beneficiary.

*Court Costs*

IT IS ORDERED AND DECREED that costs of court are to be borne by the party who incurred them.

*Clarifying Orders*

Without affecting the finality of this Final Decree of Divorce, this Court expressly reserves the right to make orders necessary to clarify and enforce this decree.

*Relief Not Granted*

IT IS ORDERED AND DECREED that all relief requested in this case and not expressly granted is denied, except Petitioner's Request for Enforcement of the Marriage Contract which is hereby severed and Petitioner's previous Judgments which are confirmed.

*Date of Judgment*

PRONOUNCED AND RENDERED on the 7th day of July, 2014 but ministerially SIGNED on the

30th day of July 2014.

_____
JUDGE PRESIDING

Page -11-

792

Appendix D

> Vernon's Texas Statutes and Codes Annotated
>   Family Code (Refs & Annos)
>     Title 1. The Marriage Relationship (Refs & Annos)
>       Subtitle B. Property Rights and Liabilities
>         Chapter 4. Premarital and Marital Property Agreements (Refs & Annos)
>           Subchapter B. Marital Property Agreement

V.T.C.A., Family Code § 4.105

§ 4.105. Enforcement

Currentness

(a) A partition or exchange agreement is not enforceable if the party against whom enforcement is requested proves that:

(1) the party did not sign the agreement voluntarily; or

(2) the agreement was unconscionable when it was signed and, before execution of the agreement, that party:

(A) was not provided a fair and reasonable disclosure of the property or financial obligations of the other party;

(B) did not voluntarily and expressly waive, in writing, any right to disclosure of the property or financial obligations of the other party beyond the disclosure provided; and

(C) did not have, or reasonably could not have had, adequate knowledge of the property or financial obligations of the other party.

(b) An issue of unconscionability of a partition or exchange agreement shall be decided by the court as a matter of law.

(c) The remedies and defenses in this section are the exclusive remedies or defenses, including common law remedies or defenses.

**Credits**
Added by Acts 1997, 75th Leg., ch. 7, § 1, eff. April 17, 1997.

Notes of Decisions (22)

V. T. C. A., Family Code § 4.105, TX FAMILY § 4.105
Current through the end of the 2013 Third Called Session of the 83rd Legislature

**End of Document**                                          © 2015 Thomson Reuters. No claim to original U.S. Government Works.