**Denise L. MARTIN, Appellant,**

v.

**Bruce Q. MARTIN, Appellee.**

No. 05–07–01571–CV.

Court of Appeals of Texas, Dallas.

April 13, 2009.

Rehearing Overruled June 17, 2009.

Peter K. Munson, Christina A. Tillett, Sherman, TX, for Appellant.

David M. Stagner, Stagner & Corley, Sherman, TX, for Appellee.

Before Justices MORRIS, LANG–MIERS, and WHITTINGTON.[1]

## OPINION

Opinion by Justice LANG–MIERS.

Denise Martin appeals the trial court's judgment granting summary judgment in favor of Bruce Martin regarding the enforceability and interpretation of the parties' marital property agreement. For the following reasons, we reverse and remand for further proceedings.

### BACKGROUND

Bruce and Denise Martin married in December 1970. In 1990, they signed a marital property agreement purporting to partition and exchange the community estate.[2] Bruce filed for divorce in 2003 and sought to enforce the marital agreement. Denise answered and asserted the statutory affirmative defenses to enforcement of the agreement, involuntary execution and unconscionability, the common-law affirmative defenses of fraud, fraudulent in-

---

1. The Honorable Mark Whittington, Justice, Court of Appeals, Fifth District of Texas at Dallas, Retired, sitting by assignment. This appeal was submitted to the panel before Justice Whittington's retirement on December 31, 2008.

2. The agreement partitioned to Denise as her separate property the parties' home and its contents, her automobile, and over $100,000 in cash. It partitioned to Bruce as his separate property an automobile, certain aircraft, a boat, and all interest in the businesses. It also partitioned to the parties as their separate property their respective future earnings and income, future-acquired property in their respective names, and all increases of their respective separate properties. The agreement obligated Bruce to provide Denise and the children "sufficient funds to enable them to enjoy the same standard of living as they had prior to the execution" of the agreement. Additionally, it obligated Bruce to pay all debts against the residence, insurance premiums for the home and vehicles, all of the family's medical insurance premiums and expenses, and the children's private school expenses and tuition for college.

ducement, breach of fiduciary duty, undue influence, and coercion, and breach of contract. She also counterclaimed for a declaratory judgment that the agreement was void because it was unconscionable and she did not sign it voluntarily. Bruce raised defenses to Denise's affirmative defenses, specifically, limitations, estoppel, waiver, ratification, acceptance of benefits, and laches.

Bruce filed a combined traditional and no-evidence motion for summary judgment asking the court to determine that the marital agreement was valid and enforceable. He asserted that there was no evidence to support Denise's contention that she signed the agreement involuntarily or that the agreement was unconscionable, and he asserted that he conclusively established his defenses. Denise also filed a motion for summary judgment asserting that the marital agreement was void as a matter of law based on her statutory and common-law defenses. The trial court granted Bruce's motion without stating the basis for its ruling and held that the marital agreement is "valid and enforceable." Bruce then filed a second motion for summary judgment arguing that the marital agreement partitioned the entire community estate and that there was no community property remaining to be divided. The court granted the second motion as well. Denise's breach of contract claim was tried to a jury, which found against her. The jury's verdict and the court's rulings on Bruce's two motions were incorporated into the final judgment.

## STANDARD OF REVIEW

We review a no-evidence summary judgment under the same legal sufficiency standard used to review a directed verdict. See TEX.R. CIV. P. 166a(i); *Schindler v. Baumann*, 272 S.W.3d 793, 795 (Tex.App.-Dallas 2008, no pet. h.). We must determine whether the nonmovant produced more than a scintilla of probative evidence to raise a fact issue on the material questions presented. *Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex.2002); *Patino v. Complete Tire, Inc.*, 158 S.W.3d 655, 659 (Tex.App.-Dallas 2005, pet. denied); *Gen. Mills Rests., Inc. v. Tex. Wings, Inc.*, 12 S.W.3d 827, 832 (Tex.App.-Dallas 2000, no pet.). Summary judgment also may be granted on an affirmative defense. *See* TEX.R. CIV. P. 166a(c). To prevail on a traditional motion for summary judgment on an affirmative defense, the party asserting the defense must prove all elements of the defense as a matter of law. *See id.; Randall's Food Mkts., Inc. v. Johnson*, 891 S.W.2d 640, 644 (Tex. 1995); *Toles v. Toles*, 113 S.W.3d 899, 907–08 (Tex.App.-Dallas 2003, no pet.). Under both the no-evidence and traditional reviews, we consider the evidence and any reasonable inferences in the light most favorable to the nonmovant. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex.1985). When the trial court does not state its basis for granting summary judgment, we will affirm if any of the theories asserted are meritorious. *W. Inv., Inc. v. Urena*, 162 S.W.3d 547, 550 (Tex.2005).

## LAW RELATING TO MARITAL PROPERTY AGREEMENTS

Spouses may agree to partition and exchange between themselves all or part of their community property, then existing or to be acquired, at any time during the marriage. TEX. CONST. art. XVI, § 15; TEX. FAM.CODE ANN. § 4.102 (Vernon 2006). A marital property agreement may be set aside if the party against whom enforcement is sought proves that

(1) the party did not sign the agreement voluntarily; or

(2) the agreement was unconscionable when it was signed and, before she executed the agreement, that party

(A) was not provided a fair and reasonable disclosure of the property or financial obligations of the other party;

(B) did not voluntarily and expressly waive, in writing, any right to disclosure of the property or financial obligations of the other party beyond the disclosure provided; and

(C) did not have, or reasonably could not have had, adequate knowledge of the property or financial obligations of the other party.

TEX. FAM.CODE ANN. § 4.105 (Vernon 2006). Whether the agreement is unconscionable "shall be decided by the court as a matter of law." *Id.* § 4.105(b). Additionally, if the marital property agreement was executed prior to September 1, 1993, as here, common-law defenses are also available to defeat enforcement of the agreement. *See* Act of Apr. 30, 1993, 73rd Leg., R.S., ch. 136, § 3, 1993 Tex. Gen. Laws 283, 283 (subsequent amendments omitted).[3]

VALIDITY OF MARITAL PROPERTY AGREEMENT

## A. No–Evidence Motion for Summary Judgment

In her first and second issues, Denise argues that the trial court erred by granting Bruce's no evidence motion for summary judgment because she raised a genuine issue of material fact regarding whether the agreement is enforceable.

■ A marital property agreement is not enforceable if the party against whom enforcement is sought proves she did not sign the agreement voluntarily. TEX. FAM. CODE ANN. § 4.105. The statute does not define "voluntarily," and Texas courts have generally construed it to mean an action that is taken intentionally or by the free exercise of one's will. *See Sheshunoff v. Sheshunoff,* 172 S.W.3d 686, 696 (Tex. App.-Austin 2005, pet. denied); *see also Cooper v. Cochran,* 288 S.W.3d 522, 533 (Tex.App.-Dallas 2009, no pet. h.) (describing duress and undue influence as causing a party to do something she would not otherwise have done); *Matelski v. Matelski,* 840 S.W.2d 124, 128–29 (Tex.App.-Fort Worth 1992, no writ) (equating duress with involuntary). Generally, whether a party executed an agreement voluntarily or as the result of a state of duress or coercion is a question of fact dependent upon all the circumstances and the mental effect on the party claiming involuntary execution. *Matthews v. Matthews,* 725 S.W.2d 275, 278–79 (Tex.App.-Houston [1st Dist.] 1986, writ ref'd n.r.e.); *Sanders v. Republic Nat'l Bank of Dallas,* 389 S.W.2d 551, 554 (Tex.Civ.App.-Tyler 1965, no writ).

Denise contends that Bruce decided the terms of the agreement and that her lawyer did not play a substantial role in the negotiation of its terms. She also argues that the pressure and coercion Bruce placed on her to sign the agreement caused her to sign it when she otherwise would not have done so.

**The Summary Judgment Evidence**

■ Viewing the evidence in the light most favorable to the nonmovant, Denise, the record shows:

In 1984, after fourteen years of marriage, Bruce established an independent air charter business, Martinaire, Inc.,

---

3. The only difference between the current law and the law in effect when the parties signed the marital agreement is the availability of common-law defenses. *See* Act of June 1, 1987, 70th Leg, R.S., ch. 678, § 1, 1987 Tex. Gen. Laws 2530, 2531 (subsequent amendments omitted) (current version at TEX. FAM. CODE ANN. § 4.105). For that reason, we cite to the current statute.

based at Love Field in Dallas. Over the years, he established other related businesses in Texas and Oklahoma. Bruce managed these businesses without Denise's involvement and Denise had no knowledge of the businesses' assets or values without Bruce's representations. In 1988, the businesses began to experience financial trouble and a major shareholder and board member threatened litigation against Martinaire, Inc. Bruce told Denise that they needed to execute a marital property agreement to protect the family's assets from possible financial ruin in the event of litigation against the business.[4] The couple signed a partition and exchange agreement in 1988, but they learned later that the "lawyer" advising Denise was not licensed. Bruce was advised that he and Denise should execute a new agreement. Around May 1990, Bruce gave Denise a draft of a proposed new marital property agreement and told her that she needed to retain her own lawyer to review it. Denise explained that Bruce decided the terms of the marital agreement and she just needed a lawyer to sign off on it.

Denise asked her neighbor, Katherine Woodruff, a lawyer, to look at the agreement. Woodruff reviewed the agreement and expressed several concerns: she told Denise that, based on her experience, marital agreements typically are only sought when one spouse is contemplating divorce or is seeing someone else. Denise assured Woodruff that Bruce did not want a divorce, but her concerns upset Denise. Bruce assured Denise that he wanted the agreement solely to protect the family.

Woodruff testified that "the deal was done before I got involved." Even so, she attempted to negotiate provisions she be-

lieved were in Denise's best interest. She asked Bruce for a financial audit of the businesses, but he refused. He also refused to produce business and personal income tax returns, and he did not want to "make any written representation regarding value [or] swear to an inventory." When Bruce refused to provide any financial disclosures, Woodruff wrote to his attorney stating that she would have to withdraw from representing Denise because she could not advise Denise whether the agreement was in her best interest without financial disclosures. She also told Bruce's attorney that "obvious pressure [was] being placed" on Denise to sign the agreement. In response to this letter, Bruce produced a sworn inventory containing his opinion of the estimated value of the community property estate, including the values of his shareholder positions in the businesses. The inventory purported to list all of the assets of the community estate and valued those assets at $643,785 (gross value of $2,282,000 less $1,638,215 debt). Bruce estimated the value of his shares in Martinaire, Inc. as a negative $162,000 and his shares in an Oklahoma corporation, Martinaire of Oklahoma, Inc., as $250,000.

Woodruff told Denise that she was not satisfied with these financial disclosures and advised Denise not to sign the agreement. Denise insisted that she had to sign the agreement for the sake of her family, but would not elaborate on what she meant. Denise testified in her deposition that Bruce controlled and directed all of the family's financial planning, including all property, legal, tax, and business decisions; that he never shared information with her about the family's net worth, his present or future income, or his business

---

4. Denise stated that, by this time, they lived in a $250,000 home in Irving, owned multiple automobiles, boats, and airplanes, and sent their children to a private school. Bruce was the sole provider for the family.

plan with her; and that she relied on his advice and instruction about the contents of the marital agreement. He presented the agreement as "insurance for our family" and told Denise that it did not matter what the agreement stated because he would never assert it against her. He constantly threatened that the family would be financially ruined and would have nothing if she did not sign the agreement. When she tried to discuss her attorney's concerns with Bruce, he became outraged and called Woodruff "incapable," "unqualified," and insisted that Denise ignore Woodruff's advice. Denise said that she had no choice but to sign the agreement because her sole concern was the welfare of the family.

Denise and Bruce signed the agreement on July 10, 1990. A day or two later, Bruce called Denise and told her that his attorney recommended that she sign a document stating that she was satisfied with the financial disclosures and backdate it to July 9, 1990. The document stated, "The disclosure you have made to me is adequate and I voluntarily waive any right to any additonal [sic] disclosure regarding our property or financial obligations beyond the contemplated marital agreement." Woodruff testified that she did not recall seeing this document and probably would not have advised Denise to sign it.

Denise testified that the pressure from the threat of litigation resolved itself "very quickly" after the agreement was signed. Bruce testified that within a few months of signing the agreement, he successfully diverted the litigation threat against Martinaire, Inc. by buying back the shares owned by the disgruntled shareholder and the businesses began to thrive. Denise periodically asked Bruce to destroy the agreement because the financial threat to the family's assets had been resolved, but he always refused.

Based on our review of the evidence in the light most favorable to the nonmovant, we conclude that Denise produced more than a scintilla of evidence to raise a fact issue precluding judgment as a matter of law on her statutory defense of involuntary execution. *See Cooper*, 288 S.W.3d at 532; *Matelski*, 840 S.W.2d at 128–29; *Matthews*, 725 S.W.2d at 278–79; *Sanders*, 389 S.W.2d at 554.

We conclude, therefore, that the trial court erred by granting Bruce's no-evidence motion for summary judgment on the ground that there was no evidence that Denise signed the agreement involuntarily. Because of our disposition of this issue, we do not need to consider Denise's common-law defenses or her argument that the agreement was unconscionable.[5]

5. Even if we addressed Denise's argument that the agreement is unconscionable and concluded that it is, we could not render judgment for Denise unless we also concluded that Denise proved, as a matter of law, that she was not provided adequate disclosure of the property, that she did not waive her right to disclosure, and that she did not have and reasonably could not have had adequate knowledge of the property of the other party. *See* Tex. Fam.Code Ann § 4.105(a)(2). These additional proof requirements involve questions of fact for which we would remand for consideration by the fact-finder. *See Fanning v. Fanning*, 828 S.W.2d 135, 144–46 (Tex. App.-Waco 1992) (addressing whether evidence is legally and factually sufficient to support trial court's findings of fact relating to disclosure of property and financial obligations), *aff'd in part and rev'd in part on other grounds*, 847 S.W.2d 225 (Tex.1993). Consequently, we could not grant any more relief by consideration of Denise's argument that the agreement is unconscionable than we have already provided, and, therefore, resolution of that issue is not necessary to final disposition of this appeal. *See* Tex.R.App. P. 47.1; *Lee–Emmert v. Macatee, Inc.*, 410 S.W.2d 489, 491 (Tex.Civ.App.-Dallas 1966, no writ).

## B. Traditional Motion for Summary Judgment

In her third issue, Denise argues that the trial court erred by granting Bruce's traditional motion for summary judgment because he did not prove his defenses of limitations, estoppel, waiver, ratification, acceptance of benefits, and laches as a matter of law.

### 1. Statute of Limitations

The evidence shows that Bruce provided Denise a sworn inventory of community assets in July 1990 prior to the date they signed the marital agreement. In the inventory, Bruce represented that his shareholder interest in Martinaire, Inc. was worthless and his shareholder interest in the Oklahoma corporation was valued at $200,000. But Denise testified that in 1991 or 1992 she found financial documents in Bruce's home office that purported to show that Bruce's stock in Martinaire, Inc. was valued at $1.5 million, the stock in the Oklahoma corporation was valued at $2 million, and his net worth was in excess of $5 million. Denise testified that she realized the numbers were "unbelievably different" from the values that Bruce disclosed in the sworn inventory, but that she did not know enough about the values in the inventory to know whether the values in the documents she found were right or wrong. Bruce contends that the summary judgment must be affirmed because Denise discovered the alleged fraud in 1991 or 1992 when she found the documents, but that she waited until 2005 to assert her claim.

Texas law recognizes a spouse's claim against the other spouse for fraud against the community. *Schlueter v. Schlueter*, 975 S.W.2d 584, 589–90 (Tex. 1998). However, such a claim may not be asserted as an independent tort cause of action. Instead, it must be litigated as part of a just and right division of the community property upon divorce. *Chu v. Hong*, 249 S.W.3d 441, 444 (Tex.2008) (citing *Schlueter*, 975 S.W.2d at 589). Consequently, until the agreement was asserted against her in a divorce proceeding, Denise's claim for fraud on the community was not ripe. *See Chu*, 249 S.W.3d at 444; *Schlueter*, 975 S.W.2d at 589–90.

Additionally, Denise asserted fraud as an affirmative defense to enforcement of the agreement. We have held that the statute of limitations does not apply to a fraud claim pleaded defensively to defeat liability on an obligation induced by fraud. *See Bodovsky v. Texoma Nat'l Bank of Sherman*, 584 S.W.2d 868, 874 (Tex.Civ. App.-Dallas 1979, writ ref'd n.r.e.) (citations omitted); *see also Reynolds–Sw. Corp. v. Dresser Indus., Inc.*, 438 S.W.2d 135, 140 (Tex.Civ.App.-Houston [14th Dist.] 1969, writ ref'd n.r.e.) (citing *Mason v. Peterson*, 250 S.W. 142 (Tex. Comm'n App.1923, holding approved)). Because Denise asserts fraud claims defensively to defeat enforcement of an agreement she contends was induced by fraud, Bruce may not assert limitations to defeat those claims. *See Bodovsky*, 584 S.W.2d at 874.

We conclude that Bruce did not establish his defense of limitations as a matter of law.

### 2. Estoppel, Waiver, Ratification, and Acceptance of the Benefits

Bruce also contends that Denise's affirmative defenses to his enforcement of the agreement are barred by the doctrines of estoppel, waiver, ratification and acceptance of the benefits. These defenses required Bruce to prove, as a matter of law, that Denise accepted the benefits of the marital agreement with full knowledge of all aspects of Bruce's alleged fraud. *See St. Joseph Hosp. v. Wolff*, 94 S.W.3d 513, 536 (Tex.2002) (ratification requires full

knowledge of alleged fraud); *Lee–Emmert v. Macatee, Inc.*, 410 S.W.2d 489, 491 (Tex.Civ.App.-Dallas 1966, no writ) (waiver ordinarily involves question of party's intent); *Old Republic Ins. Co., Inc. v. Fuller*, 919 S.W.2d 726, 730 (Tex.App.-Texarkana 1996, writ denied) (acceptance of benefits of fraudulent transaction operates as ratification only if defrauded person had full knowledge of all aspects of fraudulent transaction and intended to give validity to fraudulent act).

Bruce points specifically to evidence that Denise accepted the proceeds from the sale of the marital home and the $4400 per month payment to her that he contends was required by the agreement.[6] But whether Denise accepted these payments with the intent to waive her fraud claims or ratify the marital agreement is a question of fact to be determined after a review of all of the circumstances, including whether she had full knowledge of the alleged fraud when she accepted the payments. Questions of intent have historically been treated "as uniquely within the realm of the fact finder because the determination of an individual's intent in taking a particular action is so dependent on evaluation of witnesses and credibility." *In re Estate of Romancik*, 281 S.W.3d 592, 596 (Tex.App.-El Paso Dec. 11, 2008, no pet.) (citations omitted). *See Yeldell v. Goren*, 80 S.W.3d 634, 637 (Tex.App.-Dallas 2002, no pet.) (citing *Spoljaric v. Percival Tours, Inc.*, 708 S.W.2d 432, 434 (Tex.1986)).

We conclude that Bruce did not establish, as a matter of law, his defenses of estoppel, waiver, ratification, and acceptance of benefits and that fact issues remain to be resolved by the trier of fact.

*See Wolff*, 94 S.W.3d at 536 (ratification); *Macatee, Inc.*, 410 S.W.2d at 491 (waiver); *Simpson v. Simpson*, 380 S.W.2d 855, 861 (Tex.Civ.App.-Dallas 1964, writ ref'd n.r.e.) (estoppel); *Fuller*, 919 S.W.2d at 730 (acceptance of benefits).

### 3. Laches

■ Bruce next contends that laches bars Denise's contention that the agreement is unenforceable. To establish this defense, Bruce was required to show that Denise unreasonably delayed asserting her rights to his detriment. *See City of Fort Worth v. Johnson*, 388 S.W.2d 400, 403 (Tex.1964). He contends that he established this defense as a matter of law because Denise waited over thirteen years to assert her fraud claims after learning of the alleged fraud and because the records have been destroyed and he can no longer defend himself against the claims.

■ Unreasonable delay may not be asserted against a party until her claim actually ripens. *See McCampbell v. McFaddin*, 71 Tex. 28, 32–34, 9 S.W. 138, 140–41 (1888); *see also Yeo v. Yeo*, 581 S.W.2d 734, 740 (Tex.Civ.App.-San Antonio 1979, writ ref'd n.r.e.). In this case, fraud against the community did not ripen until one of the parties filed a petition for divorce seeking a just and right division of the community estate. *See Chu*, 249 S.W.3d at 444; *Schlueter*, 975 S.W.2d at 589–90. Additionally, we conclude that fact issues remain as to whether Denise was aware of the full extent of the alleged fraud at the time she discovered the financial documents in 1991. *See Brownson v. New*, 259 S.W.2d 277, 281–82 (Tex.Civ.App.-San Antonio 1953, writ dism'd).

---

**6.** We note that the agreement did not require Bruce to make a $4400 per month payment. Instead, it required him to provide Denise with "sufficient funds to enable [her and the children] to enjoy the same standard of living as they had prior to the execution" of the agreement. And Denise testified that Bruce's monetary contributions to the family were the same both before and after they signed the agreement.

We conclude that Bruce did not establish his defense of laches as a matter of law.

We sustain appellant's first, second, and third issues.

### INTERPRETATION OF MARITAL AGREEMENT

In its order granting Bruce's second motion for summary judgment, the trial court found "that pursuant to said marital agreement there is no community property of the parties." In her fourth issue, Denise argues that the trial court erred by concluding that there was no community property remaining to be divided upon divorce and that the court should not have granted Bruce's second motion for partial summary judgment. We agree. Because the second summary judgment motion was premised on the determination that the agreement was valid and enforceable as a matter of law, the trial court's ruling on the second motion must be reversed.

We sustain appellant's fourth issue.

### CONCLUSION

We reverse that portion of the trial court's judgment incorporating the rulings on Bruce's motions for summary judgment and remand for further proceedings.