

# NUMBER 13-14-00523-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

DAVID ROBERTSON,                                                           Appellant,

v.

OKSANA ROBERTSON,                                                          Appellee.

## On appeal from the 148th District Court
## of Nueces County, Texas.

# MEMORANDUM OPINION

**Before Justices Rodriguez, Garza, and Longoria**
**Memorandum Opinion by Justice Rodriguez**

Appellant David Robertson appeals from a partial summary judgment entered in

favor of appellee Oksana Robertson, as finalized by a divorce decree.   Oksana's motion

for partial summary judgment asked the trial court to determine the validity of the marital

agreement between the parties. The trial court determined that the marital agreement was valid and enforceable and granted the partial summary judgment in Oksana's favor; the divorce decree included the terms of the marital agreement.[1] David raises five issues on appeal, asserting that the trial court erred by: (1) finding that the marital agreement was (a) valid, and (b) enforceable; (2) dividing his separate property as part of the just and right property division; (3) granting relief beyond the marital agreement Oksana sought to enforce; (4) "making a division of post-divorce income"; and (5) awarding attorney's fees in the absence of any pleadings "requesting attorney's fees under the agreement." We affirm in part and reverse and remand in part.

## I.    BACKGROUND

In 1982, David was seriously injured in a workplace accident that left him a quadriplegic; David requires twenty-four-hour nursing care. He initially received $15,000 a month for his medical and living expenses. David continues to receive monthly payments from the insurance carrier. In February 2002, David met Oksana online. At that time Oksana lived in Kremenchuk, Ukraine. By September 2002, David and Oksana were married. Prior to marriage, David owned a home in Junction, Texas. After their marriage, in November of 2002, David purchased a home in Corpus Christi, Texas.

In 2005, David disputed the insurance carrier's failure to pay cost-of-living adjustments. As a result of that dispute, the insurance carrier agreed to pay David a one-time lump-sum payment of $220,000. Out of this payment David gifted $100,000 to

---

[1] The trial court severed its ruling on Oksana's motion for partial summary judgment and the subsequent divorce decree from Oksana's remaining claims regarding enforcement of the marital agreement, thereby creating a final and appealable judgment.

Oksana and $20,000 to Oksana's son. Of the remaining $100,000, $20,000 was paid to David's attorney, and David invested the rest in coins and in improvements to their Corpus Christi home.

David also filed a separate lawsuit against the insurance carrier alleging bad faith settlement practices and disputing the insurance company's efforts to reduce the monthly payments for his nursing care. In the divorce proceedings, David alleged that, while his litigation was ongoing against his insurance carrier, Oksana threatened to inform the insurance carrier's attorney that he was misusing his insurance funds. David alleged that if Oksana carried out her threat he feared the insurance company would reduce or stop his monthly payments. He claimed that because of Oksana's threats he signed an agreement with Oksana titled "Partition of Property and Allocation of Income Agreement" (marital agreement). An attorney with whom Oksana had previously consulted drafted the marital agreement. Signed July 12, 2012, the marital agreement purports to accomplish the following actions: (1) the partition of David and Oksana's community property into separate property; and (2) the provision of an "allocation of income" between the parties. The marital agreement prohibits David from changing the terms of his will without receiving Oksana's prior written consent[2] and stipulates that half of any future recovery received as a result of David's bad faith lawsuit is Oksana's separate property.

In March 2013, Oksana filed for divorce and sought to enforce the marital agreement. Before trial, Oksana filed a traditional partial motion for summary judgment

---

[2] On appeal, David does not challenge this provision of the agreement.

asking the court to determine whether the marital agreement was valid and enforceable. The trial court determined it was and granted Oksana's motion for partial summary judgment. Subsequently, the trial court entered the divorce decree enforcing the marital agreement and implementing its terms. This appeal followed.

## II. Validity and Enforceability of Marital Agreement

By his first issue, David contends that the trial court erred when it granted Oksana's motion for partial summary judgment and determined that the alleged marital agreement was (a) valid and (b) enforceable.[3]

### A. Validity of Marital Agreement

Specifically, in addressing the validity of the marital agreement, David argues that the marital agreement did not comply with the statutory requirements set forth by the Texas Constitution and the Texas Family Code and therefore is void as a matter of law. Oksana responds and argues that the marital agreement was authorized by the constitution and family code.

### 1. Applicable Law Regarding Characterization of Property

Whether the marital agreement met the statutory requirements set forth in the Texas Constitution and Texas Family Code is a question of law that we review de novo. *See Christus Health Gulf Coast v. Aetna, Inc.,* 397 S.W.3d 651, 653 (Tex. 2013). In this case, the property characterization is important because it impacts our review of the validity of the marital agreement between David and Oksana. The marital agreement

---

[3] We address David's contention that the marital agreement was invalid in part A of Section II, and we address David's contention that the marital agreement was unenforceable in part B of Section II.

4

purported to partition the parties' marital community estate into each parties' separate estate, thereby resolving the division of the estate upon divorce. However, marital agreements and how they affect the characterization of property are controlled by the Texas Constitution and the Texas Family Code. *See* TEX. CONST. art. XVI, § 15; TEX. FAM. CODE ANN. §§ 4.001–.206 (West, Westlaw through 2015 R.S.).

"[T]he characterization of property as community or separate—in other words, the determination of to whom the property belongs—matters most when a marriage ends." W. Michael Wiist, *Trust Income: Separate or Community Property?*, 51 BAYLOR L. REV. 1149, 1153 (Fall 1999). How the marriage ends affects how property is divided. *Id.* Typically, in the context of a divorce, the spouses' community property is subject to a "just and right" division by the trial court. *See Eggemeyer v. Eggemeyer,* 554 S.W.2d 137, 139 (Tex. 1977). However, a trial court, in performing its just and right property division, is not authorized to divest either spouse of his or her separate property. *See Cameron v. Cameron,* 641 S.W.2d 210, 215 (Tex. 1982); *Wilson v. Wilson,* 44 S.W.3d 597, 600 (Tex. App.—Fort Worth 2001, no pet.).

In Texas, it is "the Texas Constitution, not the legislature or the parties involved [that] ultimately defines what is separate or community property." Thomas M. Featherston and Amy E. Douhitt, *Changing the Rules by Agreement: The New Era in Characterization, Management, and Liability of Marital Property*, 49 BAYLOR L. REV. 271, 274 (Spring 1997); *see also* TEX. CONST. art. XVI, § 15. Both the Texas Constitution and Texas Family Code allow spouses to recharacterize their property. *See* TEX. CONST. art. XVI, § 15; TEX. FAM. CODE §§ 4.102, .202. There are three types of marital agreements

into which spouses can enter to change the characterization of their property: they can partition, exchange, or convert their property. *See* TEX. CONST. art. XVI, § 15; TEX. FAM. CODE §§ 4.102, .202.

### a. Marital Agreements that Partition or Exchange Community Property into Separate Property.

Partition and exchange agreements work to change the characterization of community property into the separate property of each spouse. *See* TEX. CONST. art. XVI, § 15; TEX. FAM. CODE § 4.102. These agreements are expressly permitted by the constitution. *See* TEX. CONST. art. XVI, § 15.

> [S]pouses, without the intention to defraud pre-existing creditors, may by written instrument from time to time [1] partition between themselves all or part of their property, then existing or to be acquired or [2] exchange between themselves the community interest of one spouse . . . in any property for the community interest of the other spouse . . . in other community property then existing or to be acquired, whereupon the portion or interest set aside to each spouse shall be and constitute a part of the separate property and estate of such spouse. . . .

*Id.* Practically, a marital agreement that partitions or exchanges the spouses' community property interest divides the community estate to each spouse as their separate property. *See id.*

Chapter 4 subsection B of the Texas Family Code pertains to marital agreements that partition or exchange community property and provides the applicable framework for the creation and enforcement of such agreements. *See* TEX. FAM. CODE ANN. §§ 4.102, .104, .105. As per the constitution, a partition or exchange agreement must be in writing and signed by both parties. *See* TEX. CONST. art. XVI, § 15; TEX. FAM. CODE ANN. § 4.104. The agreement can be enforceable without consideration. TEX. FAM. CODE

6

ANN. § 4.104.

The family code also provides that a partition or exchange agreement is not enforceable if the party contesting the agreement proves that:

(1) [the party] did not sign the agreement voluntarily; or

(2) the agreement was unconscionable when it was signed and, before execution of the agreement, that party:

(A) was not provided a fair and reasonable disclosure of the property or financial obligations of the other party;

(B) did not voluntarily and expressly waive, in writing, any right to disclosure of the property or financial obligations of the other party beyond the disclosure provided; and

(C) did not have, or reasonably could not have had, adequate knowledge of the property or financial obligations of the other party.

*Id.* § 4.105(a). Section 4.105 provides the exclusive remedies or defenses to the enforcement of a partition or exchange agreement. *See id.* § 4.105(c).

### b. Marital Agreements that Convert Separate Property into Community Property.

A conversion changes a spouse's separate property into community property. *See id.* § 4.201 (West, Westlaw through 2015 R.S.). A spouse's ability to convert separate property to community property has only existed since 2000. *Long v. Long,* 234 S.W.3d 34, 42–43 (Tex. App.—El Paso 2007, no pet.). Texas enacted section 4.202 of the family code in 1999 to permit spouses to convert one spouse's separate property into community property. *Id.* (citing TEX. FAM. CODE ANN. Title 1, Chapter 4, Subchapter

7

C, § 4.201 *et. seq.*, added by Acts 1999, 76th Leg., R.S., ch. 692, §3, eff. Jan. 1, 2000).[4]

"With the enactment of transmutation statutes, spouses now have expanded options in dealing with their financial resources." *Id.* Section 4.201 of the family code allows spouses to agree that all or part of the separate property owned by either or both spouses be converted to community property. TEX. FAM. CODE ANN. § 4.202.

Section 4.203 provides the following formalities that are required in a conversion agreement:

(a)  An agreement to convert separate property to community property:

(1)  must be in writing and:

(A)  be signed by the spouses;

(B)  identify the property being converted; and

(C)  specify that the property is being converted to the spouses' community property; and

(2)  is enforceable without consideration.

(b)  The mere transfer of a spouse's separate property to the name of the other spouse or to the name of both spouses is not sufficient to convert the property to community property under this subchapter.

*Id.* § 4.203. Marital agreements that convert separate property into community property require more specificity than marital agreements that partition or exchange community property into separate property. *Compare id. with id.* § 4.103.

Additionally, the family code provides greater hurdles for enforcing marital agreements that do away with a spouse's separate property. *See id.* § 4.205. Like a

---

[4] These transmutation statutes required a constitutional amendment, which was approved on November 2, 1999. *Long v. Long,* 234 S.W.3d 34, 43 (Tex. App.—El Paso 2007, no pet.).

marital agreement that works a partition or exchange, a marital agreement converting separate property to community property is rendered unenforceable if the party contesting its enforcement can establish that the agreement was not executed voluntarily. *See id.* A marital agreement converting separate property to community property is also unenforceable if the spouse contesting the marital agreement can prove that there was not a "fair and reasonable disclosure of the legal effect of converting the property to community property." *Id.* § 4.205(a). Section 4.205(b) provides that the following language must be included in a conversion agreement to create a rebuttable presumption that there was a "fair and reasonable disclosure" of the legal effect of converting separate property to community property:

> THIS INSTRUMENT CHANGES SEPARATE PROPERTY TO COMMUNITY PROPERTY. THIS MAY HAVE ADVERSE CONSEQUENCES DURING MARRIAGE AND ON TERMINATION OF THE MARRIAGE BY DEATH OR DIVORCE. FOR EXAMPLE:
>
> > "EXPOSURE TO CREDITORS. IF YOU SIGN THIS AGREEMENT, ALL OR PART OF THE SEPARATE PROPERTY BEING CONVERTED TO COMMUNITY PROPERTY MAY BECOME SUBJECT TO THE LIABILITIES OF YOUR SPOUSE. IF YOU DO NOT SIGN THIS AGREEMENT, YOUR SEPARATE PROPERTY IS GENERALLY NOT SUBJECT TO THE LIABILITIES OF YOUR SPOUSE UNLESS YOU ARE PERSONALLY LIABLE UNDER ANOTHER RULE OF LAW."
>
> > "LOSS OF MANAGEMENT RIGHTS. IF YOU SIGN THIS AGREEMENT, ALL OR PART OF THE SEPARATE PROPERTY BEING CONVERTED TO COMMUNITY PROPERTY MAY BECOME SUBJECT TO EITHER THE JOINT MANAGEMENT, CONTROL, AND DISPOSITION OF YOU AND YOUR SPOUSE OR THE SOLE MANAGEMENT, CONTROL, AND DISPOSITION OF YOUR SPOUSE ALONE. IN THAT EVENT, YOU WILL LOSE YOUR MANAGEMENT RIGHTS OVER THE PROPERTY. IF YOU

DO NOT SIGN THIS AGREEMENT, YOU WILL GENERALLY RETAIN THOSE RIGHTS."

"LOSS OF PROPERTY OWNERSHIP. IF YOU SIGN THIS AGREEMENT AND YOUR MARRIAGE IS SUBSEQUENTLY TERMINATED BY THE DEATH OF EITHER SPOUSE OR BY DIVORCE, ALL OR PART OF THE SEPARATE PROPERTY BEING CONVERTED TO COMMUNITY PROPERTY MAY BECOME THE SOLE PROPERTY OF YOUR SPOUSE OR YOUR SPOUSE'S HEIRS. IF YOU DO NOT SIGN THIS AGREEMENT, YOU GENERALLY CANNOT BE DEPRIVED OF OWNERSHIP OF YOUR SEPARATE PROPERTY ON TERMINATION OF YOUR MARRIAGE, WHETHER BY DEATH OR DIVORCE."

*Id.* § 4.205(b).

### 2. Discussion

To be valid, the Robertsons' marital agreement must comply with both the Texas Constitution and the Texas Family Code: i.e., for the parties' marital agreement to effectively change the character of their property—separate or community—it must be either a partition, exchange, or conversion agreement. Therefore, in order to analyze the validity of the marital agreement, we must first determine the nature of the agreement. The Robertsons' marital agreement contemplates two actions—a partition or exchange of community property and an allocation of income. We review each action independently.

### a. Partition or Exchange of Community Property Interest

Marital agreements that partition or exchange community property create separate property. *See* TEX. CONST. art. XVI, § 15; TEX. FAM. CODE ANN. § 4.102. The Robertsons' marital agreement purports to affect a partition of identified real and personal property and incorporates by reference documents identifying the marital property that is

10

to be partitioned between David and Oksana.   The documents are labeled Schedule A and Schedule B:   Schedule A identifies properties that are to be partitioned or exchanged such that they are owned by David as his separate property, and Schedule B identifies properties that are to be partitioned or exchanged such that they are owned by Oksana as her separate property.

Partition or exchange agreements can only affect the community interest.   *See* TEX. CONST. art. XVI, § 15 (noting that spouses may exchange between themselves the community interest of one spouse for the community interest of the other spouse); TEX. FAM. CODE ANN. § 4.102.   In this case, David alleges that a number of the properties identified in Schedule A were his separate property before the partition or exchange occurred. [5]   Additionally, Schedule B, identifying the property to be partitioned or exchanged to Oksana as her separate property, includes "property acquired prior to marriage" which was, by definition, already her separate property.   *See* TEX. CONST. art. XVI, § 15; *Arnold v. Leonard,* 273 S.W. 799, 810–12 (Tex. 1925); *Rivera v. Hernandez,* 441 S.W.3d 413, 420 (Tex. App.—El Paso 2014, pet. denied).   Because a marital agreement that partitions or exchanges community property has no effect on David and Oksana's preexisting separate property, this marital agreement purporting to partition or

---

[5] Schedule A identifies the following nine pieces of real and personal property that are to be partitioned or exchanged such that they are owned by David as his separate property:   (1) real property located in Junction, Texas; (2) property on Ocean Drive, Corpus Christi, Texas; (3) a handicap-equipped van; (4) firearms; (5) bank accounts in David's name; (6) coins purchased prior to marriage; (7) property acquired prior to marriage; (8) David's monthly social security check; and (9) David's workers' compensation benefits.   We note that the majority of the property identified in Schedule A was undisputedly owned by David as his separate property before the partition or exchange took place.

exchange that separate property can have no effect on that property's characterization.[6] *See* TEX. CONST. art. XVI, § 15; *Arnold,* 273 S.W. at 810–12; *Rivera,* 441 S.W.3d at 420; *see also* TEX. FAM. CODE ANN. § 4.102.

Though the agreement cannot function to partition or exchange property that is already characterized as separate, we determine that it could effectively recharacterize the remaining community property interest between the parties, thereby creating the intended separate properties contemplated by the marital agreement. *See* TEX. CONST. art. XVI, § 15; TEX. FAM. CODE ANN. § 4.102. To the extent the marital agreement purports to partition or exchange the parties' community property, it is sufficient to do so, and we conclude that the portion of the marital agreement that partitions or exchanges the Robertsons' community property into the other's separate property is valid.[7] *See* TEX. CONST. art. XVI, § 15; TEX. FAM. CODE ANN. § 4.102.

### b.    Allocation of Income

The Robertsons' marital agreement also purports to affect an income allocation both during the parties' marriage and continuing in the event of divorce. The only reference to the "Allocation of Income" portion of the marital agreement is included in the initial stipulations. It reads, "[t]he parties intend by this agreement to . . . establish the protocol for paying their monthly expenses out of the income described in Schedule C."

---

[6] A review of the community property actually partitioned or exchanged would be relevant to the question of whether the marital agreement was unconscionable—an issue not before this Court on appeal. *See In re Poly-America, L.P.,* 262 S.W.3d 337, 348 (Tex. 2008) (orig. proceeding).

[7] The Robertsons' marital agreement provides that "[i]f any provision of this agreement is for any reason found to be unenforceable, all other provisions remain enforceable."

12

Schedule C is titled "Identification and Expense Allocation of Monthly Income received from Arrowpoint Capital." The income received from Arrowpoint Capital is David's separate property.[8]

Schedule C provides that David's separate income is to be placed in a "community" bank account and directs that all expenses be paid out of that community account. In addition to providing for payment of all recurring household expenses and David's nursing expenses, Schedule C directs that any remaining income from Arrowpoint Capital "shall be divided 50%–50% to each party and shall become that party's separate property." The effect of this provision is to take David's separate property, cause it to be deposited into a "community" bank account, and then transfer one half of the remaining monies (after payment of expenses) to Oksana as her separate property.[9] Finally, and by one sentence, Schedule C also states that "[i]n the event that the Parties divorce[,] this income allocation will not change."

Because this "Allocation of Income" identified in Schedule C of the marital agreement only contemplates David's separate property, in order to be valid, it must

---

[8] It is undisputed that the Arrowpoint Capital income is compensation for David's 1982 on-the-job injury, sustained approximately twenty years before his marriage to Oksana. As such, it is characterized as his separate property. *See Cottone v. Cottone,* 122 S.W.3d 211, 213 (Tex. App.—Houston [1st Dist.] 2003, no pet.) (recognizing that even when the injury occurs during marriage, recovery for personal injuries is generally the injured spouse's separate property).

[9] There is no language in Schedule C evidencing David's intent to make a gift to Oksana. "Three elements are necessary to establish the existence of a gift: (1) intent to make a gift; (2) delivery of the property; and (3) acceptance of the property." *In re Estate of Hamill,* 866 S.W.2d 339, 344 (Tex. App.—Amarillo 1993, no pet.) (citing *Grimsley v. Grimsley,* 632 S.W.2d 174, 177 (Tex. App.—Corpus Christi 1982, no writ) ("Among the indispensable conditions of the valid gift and the intention of the donor to absolutely and irrevocably divest himself of the title, dominion and control of the subject gift and the praesenti at the very time he undertakes to make the gift.")).

comply with the provisions of family code section 4.205 that allows for the conversion of separate property to community property. *See* TEX. FAM. CODE ANN. § 4.205. As addressed above, section 4.205(b) requires that the agreement include specific statutorily prescribed disclaimers identifying the consequences of the transmutation agreement. *See id.* § 4.205(b). Schedule C did not include any disclaimer regarding the effect of the income allocation agreement. *See id.*

Because the terms of Schedule C do not comply with the explicit provisions of the Texas Family Code, as dictated by the Texas Constitution, the agreement to allocate income is not a valid marital agreement and cannot be enforced through a divorce proceeding. *See id.* We agree with David that Schedule C of the marital agreement that provided for an allocation of income from David's separate property, even in the event of divorce, is void for failure to comply with the requirements set out in the Texas Constitution and Texas Family Code. *See* TEX. CONST. art. XVI, § 15; TEX. FAM. CODE ANN. § 4.205.

### 3. Summary

We overrule the part of David's first issue that challenges the validity of the marital agreement's partition or exchange of community property, but we sustain the part of his first issue that challenges Schedule C of the marital agreement and the allocation of David's income.[10]

---

[10] Because we have determined that the portion of the marital agreement that purported to allocate David's income between David and Oksana is void for failure to comply with the constitution and family code, we do not reach David's fourth issue, in which he contends that the allocation of income is impermissible spousal income, because it is unnecessary to the disposition of this appeal. *See* TEX. R. APP. P. 47.1.

**B.    Enforceability of the Marital Agreement**

Having concluded a portion of the marital agreement is valid, we must next address the second part of David's first issue—his challenge to the enforceability of the marital agreement.   David contends that he raised fact questions concerning the enforceability of the agreement, thereby precluding summary judgment.   Specifically, David alleges that he produced more than a scintilla of evidence that he did not enter into the marital agreement voluntarily.   Oksana responds and argues that David did not put forth summary judgment evidence to show that his participation in the marital agreement was involuntary.

**1.    Standard of Review and Applicable Law**

The party challenging the enforceability of a marital property agreement bears the burden of proving the agreement was involuntary or unconscionable.   *See* TEX. FAM. CODE ANN. § 4.105 (West, Westlaw through 2015 R.S.); *Pletcher v. Goetz*, 9 S.W.3d 442, 445 (Tex. App.—Fort Worth 1999, pet. denied) (op. on reh'g).   Whether a party executed an agreement voluntarily is a question of fact.   *Martin v. Martin*, 287 S.W.3d 260, 263 (Tex. App.—Dallas 2009, pet. denied).   We review a trial court's granting of a traditional motion for summary judgment under a de novo standard of review.   *Creditwatch, Inc. v. Jackson,* 157 S.W.3d 814, 816 n.7 (Tex. 2005).   To obtain relief via a traditional motion for summary judgment, the movant must establish that no material fact issue exists and that it is entitled to judgment as a matter of law.   TEX. R. CIV. P. 166a(c); *see Garza v. Exel Logistics, Inc.,* 161 S.W.3d 473, 475 n.10 (Tex. 2005); *Mowbray v. Avery*, 76 S.W.3d 663, 690 (Tex. App.—Corpus Christi 2002, pet. denied). After the movant produces

15

evidence sufficient to show it is entitled to summary judgment, the non-movant must then present evidence raising a fact issue. *See Walker v. Harris*, 924 S.W.2d 375, 377 (Tex. 1996).

A marital agreement that partitions or exchanges community property under family code section 4.105 is not enforceable if the party challenging enforcement establishes that he or she did not sign the agreement voluntarily. TEX. FAM. CODE ANN. § 4.105. "Generally, whether a party executed an agreement voluntarily . . . is a question of fact dependent upon all the circumstances and the mental effect on the party claiming involuntary execution." *Martin*, 287 S.W.3d at 263.

The voluntary execution of a marital agreement under section 4.105 must be intentional and the product of free will. *Sheshunoff v. Sheshunoff*, 172 S.W.3d 686, 695 (Tex. App.—Austin 2005, pet. denied). The *Sheshunoff* Court determined that "the presence of such factors as fraud, duress, and undue influence may bear upon the inquiry" of whether a partition and exchange agreement was involuntarily executed. *Id.* at 607. We can therefore look to the common-law defenses as they relate "to the controlling issue of whether the party resisting enforcement executed the agreement voluntarily." *Id.*

"Generally speaking, any coercion of another, either mental, physical or otherwise, causing him to act contrary to his own free will or submit to a situation or a condition against his own volition or interest, constitutes 'duress.'" *Pierce v. Estate of A. Haverla*, 428 S.W.2d 422, 425 (Tex. App.—Tyler 1968, writ ref'd n.r.e.).

> Stated differently, duress is the deprivation by one person of another by putting the other in fear, in order to obtain some valuable advantage from

16

the other. To constitute duress, the threat must be of such character to overcome the willpower of a person and cause them to do what he or she otherwise would not.

*Doe v. Catholic Diocese of El Paso,* 362 S.W.3d 707, 719 (Tex. App.—El Paso 2011, no pet.) (internal citations omitted). The question of what constitutes duress is a matter of law; however, the question of whether duress exists in a particular situation is generally a question of fact that is dependent upon all the circumstances and the mental effect on the party claiming duress. *Id.* at 719–20.

> It is well established in Texas that there can be no duress unless there is a threat to do some act which the demanding party has no legal right to do; there must be some illegal exaction or some fault or deception; the restraint must be imminent and such as to destroy the free agency without the present means of protection.

*Spring Branch Bank v. Mengden,* 628 S.W.2d 130, 134 (Tex. App.—Houston [14th Dist.] 1981, writ ref'd n.r.e.).

## 2. Discussion

David points to two improper threats that he alleges caused him to sign the marital agreement: 1) he alleges that Oksana threatened to contact the company that provided his settlement income to get his nursing benefits removed by testifying that David used his settlement monies improperly; and 2) that Oksana threatened to harm him and his family members. David's deposition testimony, however, clarified that Oksana's threats of physical harm occurred after he signed the marital agreement and therefore cannot negate the voluntary nature of his signature. In support of his allegations, David filed a

17

ten-page affidavit opposing Oksana's motion for partial summary judgment.[11]   In David's affidavit he detailed his extreme stress and anxiety concerning his nursing benefits.   He asserts that Oksana had no legal right to contact his insurance carrier and make her allegations of misuse because such action would constitute tortious interference with his existing contract.   *See In re Vesta Ins. Grp.,* 192 S.W.3d 759, 761 (Tex. 2006) (setting out the elements for tortious interference with contract).

However, without reaching the merits of David's contention that tortious interference with an existing contract could constitute duress, we note that David must also raise a fact question as to whether the alleged threats by Oksana were "imminent as such to destroy free agency without the present means of protection" in order to defeat Oksana's motion for summary judgment.   *See Mengden,* 628 S.W.2d at 134.   David's affidavit alleged that he was under pressure from both Oksana and Robert Johnson, an attorney that had an ambiguous relationship with both Oksana and David[12], that he feared he was on the cusp of losing his settlement monies, and that he was pressured to sign the marital agreement immediately so that he could obtain representation to secure his rights regarding his pending lawsuit against Arrowpoint Capital.   None of these allegations, however, raise a fact question on the imminency of the alleged threats— David even stated in his affidavit that, even before he signed the marital agreement, he

[11] Oksana objected to the affidavit on the ground that the affidavit was "totally defective and meaningless" because it did not state that it was "true and correct and within [David's] knowledge and those magic words." However, the trial court stated that it would consider the affidavit for the purpose of the hearing on Oksana's motion for partial summary judgment.

[12] David alleged that Robert Johnson represented to him that he would not be able to represent David in the Arrowpoint Capital matter until David and Oksana entered into a marital agreement that resolved their conflict.

18

reviewed a draft of it and performed internet research regarding means to nullify the agreement. As such, David produced no evidence that Oksana's threats were imminent such that his free agency was destroyed without means of protection. *See id.* We cannot determine the trial court erred when it granted Oksana's motion for partial summary judgment and found that the marital agreement was enforceable. We overrule the second part of David's first issue.

### III. JUST AND RIGHT DIVISION OF SEPARATE PROPERTY

By his second issue, David contends that the trial court erred when it made a division of property divesting him of his separate property. Specifically, David argues it was error for the trial court to grant Oksana, as her separate property, a 50% interest in his future recovery from two lawsuits: (1) *David Robertson v. Arrowpoint Capital Corp.,* No. 09-712-G, pending before the 319th District Court of Nueces County, Texas*;* and (2) any future malpractice claim against attorney Daniel Horne arising out of his handling of the Arrowpoint Capital claim. We agree with David.

The Texas Family Code dictates that "the [trial] court shall order a division of the estate of the parties . . . having due regard for the rights of each party." TEX. FAM. CODE ANN. § 7.001 (West, Westlaw through 2015 R.S.). "In making its division, the trial court may not divest one party of his separate property." *Graves v. Tomlison,* 329 S.W.3d 128, 156 (Tex. App.—Houston [14th Dist.] 2010, pet. denied) (citing *Cameron*, 641 S.W.2d at 215). This is because the Texas Constitution prohibits the divestiture of separate property by the trial court when dividing the estate of the parties. *Id.* (citing *Cameron,* 641 S.W.2d at 213); *Anderson v. Anderson*, 282 S.W.3d 150, 155 (Tex. App.—

19

El Paso 2009, no pet.). Only community property is subject to a just and right division by the trial court. *Graves,* 329 S.W.3d at 156; *Anderson,* 282 S.W.3d at 155,

In this case, the marital agreement provided that "[t]he parties also intend to continue to own property jointly. A partial list of those items is set out in Schedule D." The marital agreement references David's pending or future claims against Arrowpoint Capital and attorney Daniel Horne in Schedule D. Schedule D is a document attached to the marital agreement and titled "[p]artial list of jointly owned property." It identifies future proceeds from the above referenced pending and future litigation as community property. Though the marital agreement stated that the future recoveries are community property, it is the constitution that defines what is separate or community property.[13] *See* Thomas M. Featherston, *Changing the Rules by Agreement: The New Era in Characterization, Management, and Liability of Marital Property*, 49 BAYLOR L. REV. 271, 274.

Therefore, we must determine the characterization of David's future recoveries. As discussed above, any recovery from David's insurance carrier arising out of his personal injury claim is his separate property. *See Cottone*, 122 S.W.3d at 213. David's claim against Arrowpoint Capital alleges that Arrowpoint Capital acted in bad faith in regard to his benefits. Therefore, this claim is a suit to recover compensation arising out of his personal injury claim and it is not subject to a just and right division by the trial court incident to divorce. *See id.* Likewise, David's potential malpractice claim would

---

[13] Even if we were to construe Schedule D to purport to "convert" David's separate property into separate property, it does not comply with the statutory requirements set forth in section 4.205 of the family code. *See* TEX. FAM. CODE ANN. § 4.205.

arise out of his attorney's alleged mishandling of his bad-faith claim against Arrowpoint Capital for its failure to adequately compensate him for his injuries. In both instances, the future recoveries would compensate David for his 1982 injury and are David's separate property. *See id.*

The trial court had no discretion to make a just and right division of David's future recoveries because they are his separate property. *See Cameron,* 641 S.W.2d at 215; *Graves,* 128 S.W.3d at 156. Because the trial court erred when it awarded Oksana 50% of David's separate property interest in his future recovery in the divorce decree, we sustain David's second issue.

## IV. PRESERVATION

By his third issue, David contends that the trial court erred when it granted relief that went beyond the marital agreement Oksana sought to enforce. By David's fifth issue, he contends that the trial court impermissibly awarded Oksana her attorney's fees pursuant to the marital agreement. Oksana responds and asserts that David did not raise those issues to the trial court and that they are therefore not preserved for our review. We agree with Oksana.

A party is precluded from seeking appellate review of an issue that the party did not properly raise in the trial court. *See* Tex. R. App. P. 33.1(a)(1) ("As a prerequisite to presenting a complaint for appellate review, the record must show that . . . the complaint was made to the trial court . . . ."); *G.T. Leach Builders, LLC v. Sapphire V.P., LP,* 458 S.W.3d 502, 516 (Tex. 2015); *see also In re B.L.D.,* 113 S.W.3d 340, 350 (Tex. 2003) (citing cases for the proposition that "error [must be] preserved in the trial court"). David

21

neither raised the issue that the trial court granted relief not included in the marital agreement below, nor contested the trial court's award of attorney's fees to Oksana in the trial court.[14]  We conclude that David failed to preserve his third and fifth issues and do not reach them.

## VI.   CONCLUSION

We affirm in part the portion of the judgment based on the agreement to partition or exchange community property, and reverse in part the trial court's judgment divesting David of his separate property and remand for further proceedings consistent with this opinion.

NELDA V. RODRIGUEZ
Justice

Delivered and filed the
3rd day of December, 2015.

---

[14] We note however, that "[a] [trial] court may apportion attorney's fees in a divorce action as part of a just and right division of property."  *Phillips v. Phillips,* 296 S.W.3d 656, 671 (Tex. App.—El Paso 2009, pet. denied).